**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDRICK P. POTTER, JR., LANDOL FLETCHER AND ALL OTHERS SIMILARLY SITUATED, | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : <br> : CIVIL ACTION No. 13-cv-9150 (LLS) |
| CONVERGEX GROUP LLC, CONVERGEX EXECUTION SOLUTIONS LLC, CONVERGEX GLOBAL MARKETS LTD., CONVERGEX HOLDINGS LLC, G-TRADE SERVICES LLC, & DOES 1-10, | : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**
**AND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................................1

II.   FACTUAL BACKGROUND .......................................................................................3

      A.    The Parties ...................................................................................................3

      B.    The Claims ...................................................................................................4

      C.    The Alleged Conduct Did Not Impact the Teamsters Plan. ........................5

      D.    Neither the Central States Plan Nor Mr. Fletcher Suffered an Injury in Fact
            Traceable to the Alleged Conduct Here. ......................................................6

            1.    The Central States Plan ....................................................................6

            2.    The Funded Status of the Central States Plan.................................7

III.  ARGUMENT ...............................................................................................................8

      A.    The Teamsters Plan Was Not Charged Any Undisclosed Markups or
            Markdowns and Defendants Are Entitled to Summary Judgment on
            Mr. Potter's Claims. ....................................................................................8

            1.    Rule 56 Standard of Review..............................................................8

            2.    It Is Undisputed That Defendants Did Not Charge the Teamsters
                  Plan Any Undisclosed Markups or Markdowns................................9

      B.    The Court Should Dismiss All of Mr. Fletcher's Claims on Behalf of the
            Central States Plan and Similarly Situated Plans for Lack of Constitutional
            and Statutory Standing. ..............................................................................12

            1.    Rule 12(b)(1) Standard of Review ..................................................12

            2.    Mr. Fletcher Lacks Constitutional Standing Under Article III to
                  Assert Claims on Behalf of the Central States Plan. .....................13

                  a.    Mr. Fletcher Cannot Establish an Injury in Fact Sufficient to
                        Establish Constitutional Standing..................................15

                  b.    Mr. Fletcher Cannot Establish That His Alleged Injury Is
                        Likely to Be Redressed by the Relief He Seeks. .........................17

                  c.    Mr. Fletcher Cannot Establish That His Alleged Injury Was
                        Caused by Defendants' Alleged Misconduct. ..............................20

            3.    Mr. Fletcher Lacks Both Statutory and Constitutional Standing to
                  Bring Claims on Behalf of Other Plans in Which He Is Not a
                  Participant...........................................................................22

                  a.    Mr. Fletcher Lacks Statutory Standing Under ERISA to
                        Bring Claims on Behalf of Other Plans in Which He Is Not a
                        Participant..................................................................22

            b.     Mr. Fletcher Lacks Constitutional Standing Under Article III to Assert Claims on Behalf of Any ERISA Plan Other Than the Central States Plan.................................................................27

IV.    CONCLUSION ................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Pac. Enters.*,
    950 F.2d 611 (9th Cir. 1991) ............................................................................. 26

*Allee v. Medrano*,
    416 U.S. 802 (1974) ............................................................................................ 26

*Allen v. Wright*,
    468 U.S. 737 (1984) ............................................................................................ 14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................ 26

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 1586 (2013)................... 12, 13

*Anwar v. Fairfield Greenwich Ltd.*,
    884 F. Supp. 2d 92 (S.D.N.Y. 2012) ................................................................. 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .................................................................................. 7

*Baker v. Carr*,
    369 U.S. 186 (1962) ............................................................................................ 14

*Bd. of Trs of Aftra Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    806 F. Supp. 2d 662 (S.D.N.Y. 2011) ............................................................... 10

*Blackmar v. Lichtenstein*,
    603 F.2d 1306 (8th Cir. 1979) ........................................................................... 26

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................... 9, 10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005) ...................................................... 13, 19, 20, 27

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*,
    939 F.2d 12 (2d Cir. 1991) ................................................................................ 26

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................. 13

*Connecticut v. Physicians Health Servs. of Conn., Inc.*,
  287 F.3d 110 (2d Cir. 2005) ............................................................... 15, 18, 23

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) .............................................................................. 7

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) ....................................................... 15, 17, 28

*Diamore v. Am. Honda Motor Co.*,
  248 F. Supp. 2d 82 (D. Conn. 2002) ........................................................... 10

*Dister v. Cont'l Grp., Inc.*,
  859 F.2d 1108 (2d Cir. 1988) ........................................................................ 9

*Fox v. McCormick*,
  No. 12-1869, 2013 WL 6439128 (D.D.C. Dec. 9, 2013) ........................... 20, 21

*Gates v. United Health Group Inc.*,
  No. 11-3487, 2012 WL 2953050 (S.D.N.Y. July 16, 2012)........................... 25

*Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS, Inc.*,
  465 F.3d 1123 (9th Cir. 2006) ..................................................................... 13

*Gray v. Briggs*,
  45 F. Supp. 2d 316 (S.D.N.Y. 1999) ........................................................... 12

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ...................................................................................... 19

*Harley v. Minn. Mining & Mfg. Co.*,
  284 F.3d 901 (8th Cir. 2002) ....................................................................... 28

*Hastings v. Wilson*,
  516 F.3d 1055 (8th Cir. 2008) ..................................................................... 26

*Hill v. Vanderbilt Capital Advisors, LLC*,
  834 F. Supp. 2d 1228 (D.N.M. 2011), *appeal dismissed*, 702 F.3d 1220 (10th Cir. 2002)................................................................................................................ 21

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) ........................................................................ 15

*Horvath v. Keystone Health Plan E. Inc.*,
  333 F.3d 450 (3d Cir. 2003) ........................................................................ 19

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) .......................................................................... 7

*In re Avon Prods., Inc. Sec. Litig.*,
    No. 05-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ...................................................... 11

*In re Bear Stearns Co.*
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................................................... 11

*In re Citigroup ERISA Litig.*,
    No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *aff'd*, 662 F.3d 128 (2d
    Cir. 2011) .................................................................................................................................. 11

*In re ING Groep N.V. ERISA Litig.*,
    749 F. Supp. 2d 1338 (N.D. Ga. 2010) ................................................................................. 26

*In re Morgan Stanley ERISA Litig.*,
    696 F. Supp. 2d 345 (S.D.N.Y. 2009) ................................................................................... 10

*In re Pfizer Inc. ERISA Litigation*,
    No. 04-10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ............................................... 25

*In re Reliant Energy ERISA Litig.*,
    336 F. Supp. 2d 646 (S.D. Tex. 2004) ................................................................................... 26

*In re SLM Corp. ERISA Litig.*,
    No. 08-4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010), *aff'd sub nom. Slaymon
    v. SLM Corp.*, 506 F. App'x 61 (2d Cir. 2012) ..................................................................... 24

*Ingraham v. Wright*,
    430 U.S. 651 (1977) ............................................................................................................... 18

*Izzarelli v. Rexene Prods. Co.*,
    24 F.3d 1506 (5th Cir. 1994) ................................................................................................. 11

*J.T. v. Regence BlueShield*,
    291 F.R.D. 601 (W.D. Wash. 2013) ...................................................................................... 19

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) ................................................................................................... 4

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
    561 F.3d 112 (2d Cir. 2009) ............................................................................................ passim

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) .................................................................................................................. 3

*Lewis v. Casey*,
    518 U.S. 343 (1996) .......................................................................................................... 22, 26

*Liss v. Smith*,
   991 F. Supp. 278 (S.D.N.Y. 1998) ........................................................... 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................... passim

*Mahoney v. JJ Weiser & Co.*,
   339 F. App'x 46 (2d Cir. 2009) .............................................................. 12

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ............................................................ 12, 14

*Malik v. Meissner*,
   82 F.3d 560 (2d Cir. 1996) ................................................................... 4

*McCullough v. AEGON USA, Inc.*,
   585 F.3d 1082 (8th Cir. 2009) .............................................................. 28

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
   746 F. Supp. 2d 575 (S.D.N.Y. 2010) ...................................................... 25

*Nechis v. Oxford Health Plans, Inc.*,
   421 F.3d 96 (2d Cir. 2005) .................................................................. 23

*New Creation Fellowship of Buffalo v. Town of Cheektowaga*,
   164 F. App'x 5 (2d Cir. 2005) .............................................................. 18

*Nova Health Sys. v. Gandy*,
   416 F.3d 1149 (10th Cir. 2005) ............................................................ 21

*Pedre Co. v. Robins*,
   984 F. Supp. 235 (S.D.N.Y. 1997) ......................................................... 10

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984) .................................................................... 9

*Raines v. Byrd*,
   521 U.S. 811 (1997) ......................................................................... 13

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................ 22

*Robinson v. Gov't of Malaysia*,
   269 F.3d 133 (2d Cir. 2001) ................................................................ 12

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) ................................................................. 20

*Simon v. E. Ky. Welfare Rights Org.*,
     426 U.S. 26 (1976) .......................................................................................21

*Simon v. Gen. Elec. Co.*,
     263 F.3d 176 (2d Cir. 2001) ........................................................................24

*St. Pierre v. Dyer*,
     208 F.3d 394 (2d Cir. 2000) ........................................................................21

*Taylor v. KeyCorp*,
     680 F.3d 609 (6th Cir. 2012) .......................................................................13

*United States v. Payne*,
     591 F.3d 46 (2d Cir. 2010) ..........................................................................25

*United States v. Tejeda*,
     824 F. Supp. 2d 473 (S.D.N.Y. 2012) .........................................................25

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
     454 U.S. 464 (1982) .....................................................................................14

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
     549 F.3d 100 (2d Cir. 2008) ........................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
     131 S. Ct. 2541 (2011) .................................................................................26

*Warth v. Seldin*,
     422 U.S. 490 (1975) ...............................................................................17, 29

*Whitmore v. Arkansas*,
     495 U.S. 149 (1990) .....................................................................................14

**STATUTES**

29 U.S.C. § 1002(7) ...................................................................................23, 26

29 U.S.C. § 1104 .........................................................................................5, 10

29 U.S.C. § 1105 .........................................................................................5, 11

29 U.S.C. § 1106(b) ....................................................................................5, 11

29 U.S.C. § 1132(a) ....................................................................13, 23, 24, 26

29 U.S.C. § 4022 ................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ....................................................................................................2, 4, 8

Fed. R. Civ. P. 82 ...............................................................................................................26

Fed. R. Civ. P. 12(b)(1) ...............................................................................................passim

Fed. R. Civ. P. 23 ...............................................................................................................26

H.R. 4348, 112th Cong. § 40211 (2012) .............................................................................8

Local Rule 56.1 .....................................................................................................................3

Article III of the United States Constitution...............................................................passim

Plaintiff Landol D. Fletcher originally filed this action in December 2013.  (Dkt. 1.)

Defendants responded with a twenty-six-page motion to dismiss, establishing that Mr. Fletcher

lacked both constitutional and statutory standing to pursue his claims.  (Dkts. 21-24.)  Instead of

responding to Defendants' arguments, Mr. Fletcher's counsel sought out another plaintiff –

Frederick J. Potter, Jr. – to file an Amended Complaint that might overcome the observed

deficiencies.  As demonstrated below, the new complaint suffers from the same factual flaws as

the original.  Accordingly, Defendants ConvergEx Group, LLC ("Group"), ConvergEx

Execution Solutions LLC ("CES"), ConvergEx Global Markets Limited ("CGM"), ConvergEx

Holdings, LLC ("Holdings"), and G-Trade Services LLC ("G-Trade") (collectively,

"Defendants")[1] now submit this Memorandum of Law in Support of their Motion to Dismiss the

Amended Complaint and Motion for Summary Judgment.  Plaintiffs lack standing to assert their

claims, and Plaintiff Frederick J. Potter, Jr. cannot demonstrate the requisite breach to sustain his

claim for breach of fiduciary duty.  The Court should therefore dismiss the Amended Complaint

in its entirety and with prejudice and enter judgment for Defendants.

## I.   INTRODUCTION

Plaintiff Frederick P. Potter, Jr. ("Mr. Potter") brings this action under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, in his capacity as Trustee

and Chairman of the Board of Trustees of the Teamsters Local 469 Pension Plan ("Teamsters

Plan") and on behalf of the Teamsters Plan.  (Amended Complaint (Dkt. 25) ("AC") ¶ 1.)

Plaintiff Landol D. Fletcher ("Mr. Fletcher") sues under ERISA on behalf of the Central States,

Southeast and Southwest Areas Pension Plan (the "Central States Plan" or the "Plan").  (AC ¶ 1.)

They purport to bring the action as a class action on behalf of "[t]he participants, beneficiaries

---

[1] By submitting this motion, Defendants do not concede that they are properly named parties to this action.

and named fiduciaries of all ERISA Plans for which any Defendant provided 'transition management' or brokerage services in which Defendants added unauthorized and undisclosed markups and markdowns under the double charging scheme at any time from October 2006 and December 2011."  (AC ¶ 57.)

The Amended Complaint – just like its predecessor – is based almost entirely upon an SEC Administrative Order (attached to the Amended Complaint as Exhibit 1) ("SEC Order"). Further, while the Amended Complaint generally alleges that Defendants provided transition management "and/or" brokerage services to ERISA plan clients, neither Mr. Potter nor Mr. Fletcher alleges – or even seems to know – which of those services, if any, were provided to the Central States Plan, the Teamsters Plan, or any of the other plans they seek to represent.  Nor do they appear to know how many alleged improper trades, if any, were executed, the principal value of those trades, or – most significantly – the amount of alleged improper charges incurred by any of the plans.  Mr. Fletcher is not yet retired and does not allege that, as a consequence of Defendants' actions or otherwise, he failed to receive any retirement benefits to which he is entitled.  Indeed, inquiry into the precise questions at the heart of the Amended Complaint would have revealed that neither Mr. Fletcher nor Mr. Potter possesses a cognizable claim against Defendants.

*First*, Mr. Potter's claims fail at the most basic factual level:  the Teamsters Plan was not charged any alleged "undisclosed markups and markdowns."  Because it is beyond dispute that the Teamsters Plan was not the victim of any alleged wrongdoing, Defendants are entitled to summary judgment under Rule 56 on all of Potter's claims.  As a separate and independent ground for dismissal, the Court can dismiss Mr. Potter's claims under Rule 12(b)(1) for lack of subject matter jurisdiction.  Because no "undisclosed markups and markdowns" were charged to

the Teamsters Plan, it suffered no injury, and Mr. Potter thus lacks both constitutional standing to

sue on behalf of the Teamsters Plan and statutory standing to sue on behalf of the other plans he

seeks to represent.

*Second*, Mr. Fletcher cannot plausibly allege that the claimed illegal profit charged to the

Central States Plan – approximately $1,600.00 determined to date – could have caused the so-

called harm he alleges:  increased risk of default of the Central States Plan, putting

Mr. Fletcher's pension benefits in jeopardy.  Even if Mr. Fletcher could establish the requisite

harm to have standing to sue, he cannot show that the recovery sought here would remedy the

Central States Plan's massive and long-running funding shortfall.  At bottom, Mr. Fletcher

cannot demonstrate an injury in fact caused by Defendants' alleged misconduct that can be

redressed by a favorable ruling of this Court, and thus lacks standing to sue on behalf of both the

Plan and the other plans he also seeks to represent.  Accordingly, this Court lacks subject matter

jurisdiction to hear Mr. Fletcher's claims, compelling dismissal under Rule 12(b)(1).

## II.    FACTUAL BACKGROUND[2]

### A.    The Parties

Mr. Potter is Trustee and Chairman of the Board of Trustees of the Teamsters Plan, a

defined benefit plan under ERISA.  (AC ¶¶ 1, 24.)  The Trustees are the named fiduciaries of the

Teamsters Plan.  (AC ¶ 1.)  Mr. Fletcher is a participant in the Central States Plan, which is also a

defined benefit plan under ERISA, but he is not a named fiduciary.  (AC ¶¶ 1, 17, 24.)  In a

defined benefit pension plan, the plan guarantees the payment of specific pension benefits,

defined by the terms of the plan, to employee-participants such as Mr. Fletcher.  *See LaRue v.*

*DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008).  Fletcher admits that he is still

---

[2] Defendants incorporate by reference their Local Rule 56.1 Statement of Undisputed Material Facts in Support of
Their Motion for Summary Judgment ("SOF").

actively working and therefore is not currently receiving plan benefits.  (AC ¶ 17.)  Indeed, there is no allegation in the Amended Complaint that Mr. Fletcher has not received any benefits to which he is entitled as a result of the conduct alleged by Defendants or otherwise.

G-Trade and CES are broker-dealers registered in the United States, and CGM was a broker-dealer formerly registered in Bermuda.  (AC ¶¶ 21, 22.)  According to the Amended Complaint, from approximately 2006 through 2011, G-Trade, CES, and CGM offered "transition management" and brokerage trading services, including the execution of equity orders for institutional customers.[3]  (AC ¶¶ 1-4.)  These institutional customers included, in some instances, asset managers who managed funds on behalf of ERISA retirement plans.  (AC ¶ 43; Declaration of Bea Ordonez ("Ordonez Decl.") ¶ 9.)[4]

## B.    The Claims

Relying on the SEC Order, Plaintiffs allege that between October 2006 and December 2011, Defendants added unauthorized and undisclosed markups and markdowns (also known as "spread income") to the securities trades they executed on behalf of their customers, including ERISA plans.[5]  (AC ¶¶ 36-45; SEC Order ¶¶ 4-11.)

---

[3] *See* AC ¶ 3 n.2 ("'Transition Management' in this Complaint refers to large-scale sales and/or purchases of securities that are necessary when transitioning institutional plan investments, *e.g.* from one entity or portfolio, such as a fund or investment advisor, to a different fund or portfolio.  The transition might be necessary, for example, so that the pension plan's investments match the preferences of a new investment advisor.").

[4] Defendants attach the Ordonez Declaration to this Motion in support of their contention that the Court should grant Defendants summary judgment with respect to Mr. Potter's claims under Rule 56 and dismiss Mr. Fletcher's claims for lack of subject matter jurisdiction under Rule 12(b)(1).  *See* Fed. R. Civ. P. 56; Fed. R. Civ. P. 12(b)(1).  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings, and "evidentiary matter may be presented by affidavit or otherwise."  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *see also infra* Section III.B.1 (summarizing Rule 12(b)(1) standard of review).

[5] Group and Holdings are not broker-dealers, do not execute securities trades, and were not named as Respondents in the SEC Order.  As the SEC Order makes clear, Group is the parent company of Defendants CES, G-Trade, and CGM and is not SEC-registered in any capacity.  (SEC Order ¶¶ 1-3, n.3.)

4

Based on this alleged conduct, Plaintiffs assert that Defendants:  (i) breached their fiduciary duties under ERISA section 404(a), 29 U.S.C. § 1104(a); (ii) engaged in prohibited transactions in violation of ERISA section 406(b), 29 U.S.C. § 1106(b); and (iii) are further liable as co-fiduciaries under ERISA section 405, 29 U.S.C. § 1105.  (AC ¶¶ 61-84.)  They hope to represent the participants, beneficiaries, and named fiduciaries of all ERISA plans for which Defendants provided transition management or brokerage services between October 2006 and December 2011 and which were charged unauthorized markups and markdowns (a practice also referred to as "net trading").  (AC ¶ 57.)  Plaintiffs seek to recover claimed losses allegedly sustained by the Teamsters Plan, the Central States Plan, and other similarly situated ERISA plans (the "Other Plans") arising out of alleged violations of ERISA, and request equitable remedies in the form of injunctive relief, constructive trust, equitable surcharge, restitution, and other monetary relief.  (AC ¶ 55; *see also* AC at 27, ¶¶ (a)-(l).)

### C.    The Alleged Conduct Did Not Impact the Teamsters Plan.

It cannot be disputed that the Teamsters Plan did *not* incur any of the undisclosed fees or charges alleged in the Amended Complaint.

More specifically, Bea Ordonez, chief operations officer of G-Trade Services LLC, reviewed Defendants' books and records related to the alleged trading spread earned on trades routed to CGM between October 2006 and December 2011, which review included an examination of the "Client End of Day" and "Booked Trades" tables within the firm's trading system, G-Pro, as well as a review and search of the client and subaccount tables in G-Pro and the client and subaccount tables in G-Trade's in-house new accounts system.  (Ordonez Decl. ¶¶ 1-4; SOF ¶ 4.)  Teamsters Local 469 was a customer of an entity that was merged into CES in 2006 and that provided commission recapture services unrelated to the brokerage and transition management services provided and at issue in this litigation.  (Ordonez Decl. ¶ 10; SOF ¶ 5.)

Based on records related to the provision of commission recapture services, Ms. Ordonez determined that only five asset managers had discretion to trade on behalf of the Teamsters Plan in any capacity.  (Ordonez Decl. ¶ 11; SOF ¶ 6.)   Of these five asset managers with discretion to trade on behalf of the Teamsters Plan, only one asset manager sent flow which was routed to CGM and net traded.  (Ordonez Decl. ¶ 11; SOF ¶ 7.)  A review of that asset manager's subaccounts revealed the names of each of its clients, and also revealed each of those clients on whose behalf the asset manager routed trades to CGM or Bermuda, and who therefore may have been exposed to alleged net trading.  (Ordonez Decl. ¶ 12; SOF ¶ 8.)  The Teamsters Plan was not one of those accounts on whose behalf trades were routed to CGM and/or whose trades incurred undisclosed markups and markdowns.  (Ordonez Decl. ¶ 13; SOF ¶ 9.)

> ### D.  Neither the Central States Plan Nor Mr. Fletcher Suffered an Injury in Fact Traceable to the Alleged Conduct Here.
>
> #### 1.  The Central States Plan

The Central States Plan contracted with an asset manager, which in turn engaged the CGM Division of G-Trade and CES to conduct brokerage services on its behalf.  (*See* Ordonez Decl. ¶ 6.)  Defendant CGM, through this agreement, executed trades on behalf of that asset manager, which was working on behalf of the Central States Plan.  (Ordonez Decl. ¶ 6.)  Notably, none of the Defendants provided transition management services to the asset manager on behalf of the Central States Plan.  (Ordonez Decl. ¶ 6.)

Ms. Ordonez's review of Defendants' books and records described above determined that the only evidence existing in Defendants' books and records reflecting any impact of CGM's practice of net trading on the Central States Plan is both indirect and *de minimis*.  (Ordonez Decl. ¶¶ 7-9.)  More specifically, Defendants' books and records reflect only $1,577.93 of spread income earned on trades executed on behalf of the asset manager for which the Central States

Plan was its end customer.  (Ordonez Decl. ¶ 7.)  As reflected in Exhibit A attached to the

Ordonez Declaration, during the entire six-year putative class period, CGM executed forty-six

trades for the asset manager on behalf of the Central States Plan between May 13, 2010 and July

20, 2011, totaling $1,577.93 in allegedly unauthorized and undisclosed markups and

markdowns.[6]  (Ordonez Decl. ¶ 8.)

## 2.    The Funded Status of the Central States Plan

Plaintiffs claim that Defendants' conduct caused the Central States Plan to suffer losses,

somehow creating an increased risk that Mr. Fletcher will not receive the pension benefits to

which he is entitled.  (AC ¶ 43.)  The Amended Complaint, however, belies this very claim.

Plaintiffs assert that the Central States Plan is currently "underfunded," *i.e.*, its projected assets

and future returns are insufficient to meet its projected liabilities.  (AC ¶ 27.)  According to the

Amended Complaint, the Central States Plan's funding difficulties stretch back to at least 1998,

and the Plan was not fully funded for the fourteen-year period from 1998 through 2012.  (AC

¶ 29.)  As Plaintiffs allege, the Central States Plan was underfunded from 2009 to 2012 by

amounts ranging from $13.13 billion to $16.08 billion.[7]  (AC ¶ 29.)

---

[6] Through her investigation, Ms. Ordonez also identified a number of other asset managers, in addition to the one discussed above, that had investment discretion over the Central States Plan.  However, Ms. Ordonez was able to determine that only one asset manager had trades routed to CGM that were executed on behalf of the Central States Plan.  (Ordonez Decl. ¶ 9.)

[7] *See* 2012 Annual Funding Notice of Central States, Southeast and Southwest Areas Pension Plan, attached to the Declaration of Melissa D. Hill ("Hill Decl.") as Exhibit 1 ("2012 Funding Notice"); *see* 2011 Annual Funding Notice of Central States, Southeast and Southwest Areas Pension Plan, attached to the Hill Declaration as Exhibit 2 ("2011 Funding Notice").  To determine if a claim is legally sufficient, a court may consider any document attached to the complaint as an exhibit, documents or statements incorporated in the complaint by reference, any matters of which judicial notice may be taken, and any documents either in a plaintiff's possession or of which he or she had knowledge and relied upon in bringing suit.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).  Where a "plaintiff fails to introduce a pertinent document as part of [its] pleading, defendant may introduce the exhibit as part of [its] motion attacking the pleading." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327, at 489 & n.15).  The Court can properly consider the 2012 Funding Notice cited in Plaintiffs' Amended Complaint.  (*See* AC ¶ 29.)

Nevertheless, while Plaintiffs describe the current funded status of the Central States Plan in dire terms, the Amended Complaint does *not* allege that Mr. Fletcher or any other participant in, or beneficiary of, the Central States Plan failed to receive any benefits to which he or she is entitled.  Moreover, absent entirely are any allegations that Mr. Fletcher's pension will fall below the benefit guaranteed by the Pension Benefit Guaranty Corporation in 29 U.S.C. § 4022.  Nor do Plaintiffs allege that any participant in any of the Other Plans failed to receive any promised benefits.[8]  And finally, Plaintiffs do not – and cannot – allege that if they were to prevail in this lawsuit and the Central States Plan were made whole for the $1,577.93 in allegedly wrongful markups and markdowns that the Plan paid to Defendants, a favorable ruling would have any impact at all on the Plan's $13 billion to $16 billion shortfall, much less on the likelihood that Mr. Fletcher will receive his pension benefits.

## III.    ARGUMENT

### A.    The Teamsters Plan Was Not Charged Any Undisclosed Markups or Markdowns and Defendants Are Entitled to Summary Judgment on Mr. Potter's Claims.

#### 1.    Rule 56 Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once a motion for summary judgment has been filed, the

---

[8] Furthermore, by their nature and pursuant to ERISA's regulations, Forms 5500 and Annual Funding Notices are published in arrears.  Indeed, the Form 5500 and the 2012 Funding Notice report data only as recently as January 1, 2012.  Given the dramatic recent rise in the equity markets, and coupled with recent amendments to the Internal Revenue Code and ERISA provisions related to the calculation of funding percentages, there is a likelihood that the funding percentage of the Central States Plan has, in fact, risen since the publication of the materials cited by Plaintiff.  *See* Moving Ahead for Progress in the 21st Century Act, H.R. 4348, 112th Cong. § 40211 (2012) (codified in scattered sections of 26 U.S.C. and 29 U.S.C.) (amending the mechanism for calculating interest rates used to determine the actuarial value of pension liabilities with respect to plan years beginning after December 31, 2011, yielding increases in funded status of defined benefit pension plans).

burden shifts to the nonmoving party to show through specific evidence that there is a triable

issue of fact on issues for which the nonmovant bears the burden of proof at trial.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmovant may not rest on mere allegations in

the pleadings or conclusory statements in declarations, but must support its contentions with

proper documentary evidence.  *Id.*; *see also R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69,

77 (2d Cir. 1984) (party opposing summary judgment "must provide 'concrete particulars'

showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without

supplying arguments or facts in opposition to that motion'" (citation omitted)).  When no rational

factfinder could find in favor of the nonmoving party because the evidence to support its case is

so slight, there is no genuine issue of material fact and the grant of summary judgment is proper.

*See Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).  Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of the case with respect to which

the nonmoving party has the burden of proof at trial, then summary judgment is appropriate

"since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322-23.

## 2. It Is Beyond Dispute That Defendants Did Not Charge the Teamsters Plan Any Undisclosed Markups or Markdowns.

The facts demonstrate that Defendants never charged the Teamsters Plan *any* undisclosed

markups and markdowns.  Mr. Potter, therefore, cannot establish that Defendants breached any

fiduciary duty owed to him or to the Teamsters Plan, a necessary element of his claim.  All of the

claims pressed on behalf of the Teamsters Plan are grounded in the same allegation:  that

Defendants charged the Plan "undisclosed markups and markdowns" when executing the Plan's

trades, and these undisclosed charges violated ERISA.  (*See* AC ¶¶ 1, 5, 34, 36-45, 57, 77.)  Fatal

to Mr. Potter's claims, however, Defendants did *not* charge the Teamsters Plan *any* undisclosed fees in the execution of the Plan's trades.  (*See* Ordonez Decl. ¶ 13; SOF ¶ 9.)

Based on that irrefutable fact, Mr. Potter's breach of fiduciary duty claim (Count I) cannot survive summary judgment.[9]  That claim rises and falls on the unsupported allegation that Defendants "collected hidden fees" from the Teamsters Plan and "failed to provide complete and accurate information" to the Teamsters Plan or its participants, beneficiaries, or fiduciaries regarding those fees.  (AC ¶ 70; *see also* AC ¶¶ 67-69.)

In fact, however, no "hidden fees" were ever collected by Defendants from the Teamsters Plan and, as a result, no subsequent failure "to provide complete and accurate information" on those "hidden fees" could have occurred.  (*See* Ordonez Decl. ¶¶ 11-13; SOF ¶¶ 7-10.)  Because Mr. Potter is unable to establish an essential element of his fiduciary breach claim, there is no genuine issue of material fact, and summary judgment for Defendants is required.  *Celotex Corp.*, 477 U.S. at 322.[10]

Because there is no breach of fiduciary duty, Mr. Potter's co-fiduciary claim (Count III) also fails.  The circumstances giving rise to co-fiduciary liability under ERISA are set forth in the statute itself:

> [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . .  (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his

---

[9] To demonstrate a claim for breach of fiduciary duty under 29 U.S.C. § 1104, Mr. Potter must prove, at a minimum, "(1) that defendant was a fiduciary who, (2) was acting within his capacity as a fiduciary, and (3) breached his fiduciary duty." *Bd. of Trs. of Aftra Ret. Fund v. JPMorgan Chase Bank, N.A.*, 806 F. Supp. 2d 662, 679 (S.D.N.Y. 2011); *see also In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009).

[10] *See also Diamore v. Am. Honda Motor Co.*, 248 F. Supp. 2d 82, 85 (D. Conn. 2002) (granting summary judgment to defendant because it was undisputed that defendant did not make the alleged misrepresentations and so no breach of fiduciary duty could have occurred); *Pedre Co. v. Robins*, 984 F. Supp. 235, 239 (S.D.N.Y. 1997) (granting defendants summary judgment upon finding that no breach occurred).

specific responsibilities which give rise to his status as a fiduciary, he has enabled
such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by
such other fiduciary, unless he makes reasonable efforts under the circumstances
to remedy the breach.

29 U.S.C. § 1105(a); *see also Liss v. Smith*, 991 F. Supp. 278, 310-11 (S.D.N.Y. 1998).  The

Amended Complaint alleges that "[a]ll Defendants" are liable as co-fiduciaries both because they

"facilitated the breaches of their co-fiduciaries" by concealing those breaches and because they

"participated in a scheme which resulted in Defendants taking improper profits on securities

trades" involving Plan assets.  (AC ¶¶ 84-85.)

Yet, as ERISA's language makes clear, every allegation of co-fiduciary liability is

predicated upon the existence of a *prior* breach of fiduciary duty that the fiduciary either

"participates knowingly in," "enable[s]," or "has knowledge of" but fails to "make[] reasonable

efforts . . . to remedy."  29 U.S.C. § 1105(a).  Accordingly, this Court has held that "claims for

co-fiduciary liability require antecedent breaches of fiduciary duties by a co-fiduciar[y] to be

viable."  *In re Bear Stearns Co.* 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011).[11]  Here, because

there was no "antecedent breach" of fiduciary duty as no spread income was ever charged to the

Teamsters Plan, Mr. Potter's co-fiduciary claim fails.  (*See* Ordonez Decl. ¶¶ 11-13; SOF ¶¶ 7-

10.)

Finally, Mr. Potter's prohibited transaction claim (Count II) fails for the same reason.  An

ERISA fiduciary is prohibited under 29 U.S.C. § 1106(b)(1) from engaging in any transaction

that "deal[s] with the assets of the plan in his own interest or for his own account."  Mr. Potter

alleges in Count II that Defendants engaged in such a prohibited transaction by "adding

---

[11] *See also Izzarelli v. Rexene Prods. Co*., 24 F.3d 1506, 1525 n.34 (5th Cir. 1994) ("Because there was no breach of
fiduciary duty on the part of the Rexene defendants, it goes without saying that the Bank cannot be liable as a co-
fiduciary for the same conduct."); *In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708, at *27 (S.D.N.Y.
Aug. 31, 2009), *aff'd*, 662 F.3d 128 (2d Cir. 2011) (same); *In re Avon Prods., Inc. Sec. Litig.*, No. 05-6803, 2009
WL 848083, at *18 (S.D.N.Y. Mar. 3, 2009) (same).

undisclosed and unauthorized markups and markdowns" in conducting trades for the Plans, thus

"deal[ing] with the Plans' assets for their own interests and for their own accounts."  (AC ¶¶ 76-

77.)  But the alleged "prohibited transaction" never, in fact, occurred:  because no "undisclosed

and unauthorized markups and markdowns" were ever charged to the Teamsters Plan.  (*See*

Ordonez Decl. ¶¶ 11-13; SOF ¶¶ 7-10.)  Unable to demonstrate that any material issue of

disputed fact exists as to a required element of his claim, Mr. Potter's prohibited transaction

claim fails.[12]

Accordingly, this Court should enter judgment for Defendants with regard to Mr. Potter's

claims pertaining to the Teamsters Plan.

**B.      The Court Should Dismiss All of Mr. Fletcher's Claims on Behalf of the Central States Plan and Similarly Situated Plans for Lack of Constitutional and Statutory Standing.**

**1.      Rule 12(b)(1) Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a motion to dismiss for lack of subject

matter jurisdiction based on standing, the plaintiff "must allege facts that affirmatively and

plausibly suggest that [she] has standing to sue."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671

F.3d 140, 145 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 1586 (2013).  If the defendants challenge

only the legal sufficiency of the jurisdictional allegations, "the court must take all facts alleged in

the complaint as true and draw all reasonable inferences in favor of [the] plaintiff."  *Robinson v.*

---

[12] *See Mahoney v. JJ Weiser & Co.*, 339 F. App'x 46, 49 (2d Cir. 2009) (affirming grant of summary judgment to defendants after finding that the alleged prohibited transaction did not occur); *Gray v. Briggs*, 45 F. Supp. 2d 316, 325 (S.D.N.Y. 1999) (granting defendants summary judgment on certain prohibited transaction claims and finding "no evidence of a prohibited transaction . . . and no genuine issue of material fact that would preclude summary judgment on these claims").

*Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (internal quotation marks omitted).[13]  But

where, as here, defendants place jurisdictional facts in dispute, the court properly considers

"evidence relevant to the jurisdictional question [that] is before the court."  *Id*. at 140; *see also*

*Amidax*, 671 F.3d at 145.

### 2.    Mr. Fletcher Lacks Constitutional Standing Under Article III to Assert Claims on Behalf of the Central States Plan.

To sue under ERISA, a plan participant must have both statutory and Article III

constitutional standing.  *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir.

2009); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*

*L.L.C.*, 433 F.3d 181, 201 (2d Cir. 2005) ("[S]tatutory standing will not suffice to substitute for

Article III standing.").[14]  Article III of the United States Constitution limits the jurisdiction of

federal courts to "cases" and "controversies."  U.S. Const. art. III, § 2.  "[T]hose who seek to

invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by

Article III . . . by alleging an actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S.

95, 101 (1983).  Article III thus requires that the plaintiff "'show that he personally has suffered

some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"

---

[13] *See also Amidax*, 671 F.3d at 145 ("In reviewing a facial attack to the court's jurisdiction, we draw all facts – which we assume to be true unless contradicted by more specific allegations or documentary evidence – from the complaint and from the exhibits attached thereto.").

[14] While ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), creates the statutory standing necessary for participants to bring suit, it does not and cannot supplant the independent constitutional requirements of Article III.  *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").  In other words, the fact that ERISA permits plan participants to recover losses on behalf of a benefit plan does not relieve them of the obligation to separately demonstrate an individual injury sufficient to confer constitutional standing.  *See Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012); *Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS, Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006).  *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992) ("[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right. Whether the courts were to act on their own, or at the invitation of Congress, in ignoring the concrete injury requirement described in our cases, they would be discarding a principle fundamental to the separate and distinct constitutional role of the Third Branch – one of the essential elements that identifies those 'Cases' and 'Controversies' that are the business of the courts rather than of the political branches.").

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)).  A plaintiff must demonstrate a "personal stake in the outcome" to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions.  *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Constitutional standing has three necessary and independent elements.  *Lujan*, 504 U.S. at 560.  First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest that is (a) concrete and particularized, *Allen v. Wright*, 468 U.S. 737, 756 (1984); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Lyons*, 461 U.S. at 102).  Second, there must be a "causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Third, it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).  In short, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen*, 468 U.S. at 751.

Mr. Fletcher shoulders the burden of demonstrating standing, *even at the motion to dismiss stage*, and cannot do so by vague and conclusory allegations.  *Lujan*, 504 U.S. at 561.  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  *Id.*; *see also Makarova*, 201 F.3d at 113 ("A plaintiff asserting

14

subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it

exists."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("The burden to

establish standing remains with the party claiming that standing exists.").  Mr. Fletcher cannot

discharge his burden of proof.

> **a.    Mr. Fletcher Cannot Establish an Injury in Fact Sufficient to Establish Constitutional Standing.**

Mr. Fletcher lacks constitutional standing to bring suit on behalf of the Central States

Plan because he has failed to plead any cognizable injury in fact.[15]

> **(1)    Mr. Fletcher Has Not Suffered Any Injury.**

Participants and beneficiaries of the Central States Plan, including Mr. Fletcher, are

entitled to a contractual promise of benefits from the Plan *and nothing more*, regardless of the

relative performance of (or expenses associated with) Plan investments.[16]  Yet Mr. Fletcher does

---

[15] Mr. Potter similarly lacks constitutional standing under Article III to bring claims on behalf of the Teamsters Plan or any other similarly situated plan.  As Defendants explain above, *see supra* Section II.C, it is undisputed that the injury alleged in Plaintiffs' Amended Complaint – that Defendants subjected the Teamsters Plan to undisclosed markups and markdowns – never occurred.  Because the Teamsters Plan did not suffer any injury in fact, Mr. Potter lacks standing under Article III to bring a claim against Defendants on behalf of the Plan.  *See Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 115 (2d Cir. 2005) (dismissing claims for lack of subject matter jurisdiction because plaintiff suffered no injury in fact and thus lacked Article III standing); *David v. Alphin*, 704 F.3d 327, 333-39 (4th Cir. 2013) (same).  Even if this Court declines to enter summary judgment for Defendants with regard to Mr. Potter's claims, *see supra* Section III.A, it should nonetheless dismiss Mr. Potter's claims for lack of subject matter jurisdiction under Rule 12(b)(1).

[16]   As the Supreme Court explained in *Hughes Aircraft Co. v. Jacobson*, a defined benefit plan:

> as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. . . .  [T]he employer typically bears the entire investment risk and – short of the consequences of plan termination – must cover any underfunding as the result of a shortfall that may occur from the plan's investments. . . .  The structure of a defined benefit plan reflects the risk borne by the employer.  Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool.  Instead, members have a right to a certain defined level of benefits, known as "accrued benefits." . . . Given this accumulated contribution floor, plan members generally have a nonforfeitable right only to their "accrued benefit," so that a plan's actual investment experience does not affect their statutory entitlement.

525 U.S. 432, 439-40 (1999) (citations and some internal quotation marks omitted); *see also* AC ¶ 24; *supra* Section II.A.

not allege that he failed to receive the pension benefits to which he is entitled under the Plan. Indeed, because Mr. Fletcher is still actively employed, he is not currently eligible to receive any pension benefits at all under the Central States Plan.  (AC ¶ 17.)  Mr. Fletcher has simply suffered no injury.

**(2)     The Alleged Increased Risk to Mr. Fletcher's Pension Benefit Is Insufficient to Establish an Injury in Fact.**

Attempting to sidestep the fact that he has not yet suffered any actual harm, Mr. Fletcher contends that there is some unspecified "increased . . . risk that [he] will not receive the benefits to which he is entitled under the Plan."  (AC ¶ 43.)  Any such risk, however, stems from the long-standing underfunding of the Central States Plan that has nothing to do with Defendants or their alleged conduct.  (*See supra* Section II.D.)  Mr. Fletcher alleges, for instance, that the funded status of the Central States Plan was certified as "critical" from 2008 through 2012. According to the Central States Plan's 2011 annual report filed on Form 5500, the Plan had only 58.9% of the assets necessary to pay projected benefits.  (AC ¶ 29.)  Likewise, according to the Plan's 2012 Annual Funding Notice, its "funding percentage" dropped to 53.9% in 2012.  (AC ¶ 29 (citing 2012 Funding Notice at 1).)  The Amended Complaint admits that "there is no reasonable prospect that current benefits will be fully funded."  (AC ¶ 27.)  Moreover, according to the Plan's annual reports filed on Form 5500, the Plan has not been fully funded since at least 1998.  (AC ¶ 29.)

The current funding of the Central States Plan does not mean that Mr. Fletcher will not receive all of the benefits promised him.  Even though Mr. Fletcher alleges that the Plan has been underfunded since at least 1998 – or more than fifteen years – he does not contend that a single dollar of benefits has not been paid, highlighting the speculative nature of the asserted "risk" of nonpayment.  What is more, Mr. Fletcher even admits that the rehabilitation plan "expects to

16

forestall insolvency until 2021 or later" (AC ¶ 27), and the rehabilitation plan could, of course, meet its intended goal of restoring the Plan's economic health (or, at a minimum, this may ensure that his benefit will be paid).  Moreover, benefits owed to individual participants and beneficiaries are further protected by the Pension Benefit Guaranty Corporation, which guarantees vested benefits up to a statutory minimum in the case of a plan's default.  *See Alphin*, 704 F.3d at 338.  As noted, Mr. Fletcher makes no allegation that his benefit exceeds the statutory coverage limit.  *Id.*  And finally, although the Amended Complaint relies heavily on the SEC Order against certain of the Defendants, Mr. Fletcher conveniently ignores the fact that the SEC Order required disgorgement of more than $79 million and the establishment of a Fair Fund from which more than $107 million – the disgorgement plus prejudgment interest plus a $20 million penalty – will be paid to affected customers of Defendants.[17]

Thus, the alleged risk of future default is "insufficiently concrete and particularized" to constitute an injury in fact for Article III standing purposes.

> **b.     Mr. Fletcher Cannot Establish That His Alleged Injury Is Likely to Be Redressed by the Relief He Seeks.**

> **(1)     The $1,600 Mr. Fletcher Hopes to Recover for the Central States Plan Will Not Redress the Plan's $16 Billion Deficit.**

Indeed, Mr. Fletcher's description of the precarious financial condition of the Central States Plan proves too much.  Mr. Fletcher cannot establish that the alleged injury – the increased risk that the Central States Plan will default and he will not receive his benefit – is likely to be redressed by the sought-after relief.  *See Warth v. Seldin*, 422 U.S. 490, 505, 508 (1975) (to have

---

[17] The proposed Plan of Distribution published for public comment by the SEC provides for full compensation to customers in respect of U.S. securities net traded by CGM in Bermuda, and pro rata payments in respect of foreign securities net traded by CGM.

17

standing, a plaintiff must establish that the requested relief "will remove the harm," and that "he personally would benefit in a tangible way from the court's intervention").[18]

Here, the relief Mr. Fletcher seeks has *no likelihood* of redressing his so-called injury. Again, the amount at issue is a paltry $1,577.93.  (*See* Ordonez Decl. ¶ 8.)  However, the Plan's liabilities in 2012 exceeded its assets by as much as $16.08 billion.  (2012 Funding Notice at 1.) The 2011 Funding Notice reflects a similar fund deficit in the preceding years, with a $14.66 billion shortfall in 2011, a $13.13 billion shortfall in 2010, and a $15.06 billion shortfall in 2009. (2011 Funding Notice at 1.)  To state the obvious, awarding the Central States Plan $1,577.93 will certainly do nothing to mitigate the $16.08 *billion* funding deficit that Mr. Fletcher points to as evidence of this "risk."[19]

Having established through his own allegations that a successful lawsuit will have *no likelihood of reducing the risk that the Plan might, at some future point, default*, Mr. Fletcher fails to establish redressability under Article III.[20]

---

[18] *See also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 110-11 (2d Cir. 2008) (no standing where plaintiff's injury would not be redressed by requested relief).  In other words, Article III requires that Mr. Fletcher demonstrate that he has sustained an injury redressable by a favorable decision of the Court.  *Kendall*, 561 F.3d at 118 (citing *Lujan*, 504 U.S. at 560 (holding that Article III standing requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision" (internal quotation marks omitted))).

[19] Not surprisingly, an actionable case or controversy must involve something more than the sought-after *de minimis* recovery.  *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *New Creation Fellowship of Buffalo v. Town of Cheektowaga*, 164 F. App'x 5, 7 (2d Cir. 2005) (dismissing plaintiff's claim because defendants' conduct involved only a "minor inconvenience" to plaintiff "insufficient to satisfy the injury in fact requirement for Article III standing").

[20] Moreover, Mr. Fletcher himself cannot establish redressability sufficient to demonstrate standing for the even simpler reason that the relief he requests will not flow to him at all, but rather to the Central States Plan.  *See Physicians Health Servs.*, 287 F.3d at 118 (finding lack of Article III standing because "[n]one of the remedies being sought would flow to the [plaintiff]").

### (2)   Mr. Fletcher's Request for Injunctive and Equitable Relief Cannot Save His Claim.

Nor does the fact that the Amended Complaint also requests injunctive and equitable relief somehow sidestep the constitutional hurdle.  It is true that, in some circumstances, "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant." *Cent. States*, 433 F.3d at 199.  However, decisions allowing such suits arise from limited kinds of injuries, mostly those dealing with a plan's failure to comply with ERISA's disclosure requirements or nonmonetary breaches of fiduciary duty. *See Horvath v. Keystone Health Plan E. Inc.*, 333 F.3d 450, 455 (3d Cir. 2003) (finding standing as to plaintiff who sought injunction barring defendant from omitting information in its disclosures to plan participants).[21]

Although Mr. Fletcher characterizes much of the requested relief as "equitable,"[22] it is, at bottom, nothing more than a request for money damages. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("Almost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."). The same was true in *Kendall*, where the Second Circuit rejected plaintiff's request for restitution and disgorgement, finding that, despite plaintiff's assertions to the contrary, many of

---

[21] *See also J.T. v. Regence BlueShield*, 291 F.R.D. 601, 610 (W.D. Wash. 2013) ("To the extent that [plaintiff] seeks only to enjoin [d]efendants from disseminating allegedly erroneous information, she seeks an equitable, non-monetary relief that does not require a showing of an individual loss or injury. As a plan beneficiary, she thus has standing to pursue this remedy.").

[22] (*See* AC ¶ 54; *see also* AC at 27-28, ¶¶ (d) (requesting a "proper accounting of the transition management and brokerage services in which the Class members' plans have engaged"), (e) (requesting an "order compelling Defendants to restore all losses caused to the class members' plans, including lost investment returns on money that would have been invested but for Defendants' illegal conduct"), and (f) (requesting a "surcharge remedy to compensate the Class members' plans for their losses and/or prevent Defendants' unjust enrichment").)

19

the claims were "effectively claims for money damages." 561 F.3d 112 at 119.[23] Furthermore, the equitable and injunctive relief Mr. Fletcher seeks here is related directly to the alleged monetary loss to the Central States Plan and does not exist wholly apart from his monetary claims. *See Fox v. McCormick*, No. 12-1869, 2013 WL 6439128, at *8 (D.D.C. Dec. 9, 2013) (plaintiffs lacked Article III standing on claims for equitable and injunctive relief because such claims were "plainly intertwined with [p]laintiffs' demands for monetary relief").

No declaration, constructive trust, disgorgement, surcharge, or injunction requested by Mr. Fletcher could issue without a prior determination that Defendants were liable for monetary damages to the Plan based on the alleged unauthorized and undisclosed markups and markdowns. *Id*. As a result, Mr. Fletcher also lacks standing to bring a suit for the sought-after equitable relief.

### c. Mr. Fletcher Cannot Establish That His Alleged Injury Was Caused by Defendants' Alleged Misconduct.

Even assuming, *arguendo*, that Mr. Fletcher could establish both that he suffered an individualized harm and that his injury is likely to be redressed by the requested relief, his claim still fails because he cannot establish a causal connection between the alleged injury and Defendants' actions. *Lujan*, 504 U.S. at 560 ("the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court" (citation omitted)). Although the "traceability" of a plaintiff's harm to the defendant's conduct need not rise to the level of proximate causation, *see Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013), Article III does "require proof of a substantial

---

[23] *See also Cent. States*, 433 F.3d at 200 ("Requests for restitution or disgorgement under ERISA are different from requests for injunctive relief. Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss, to wit, that they have suffered an injury in fact." (citations, internal quotation marks, and alterations omitted)).

likelihood that the defendant's conduct caused plaintiff's injury in fact," *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (citations omitted). Where, as here, "the independent action of some third party not before the court" – rather than that of the defendant – was the direct cause of the plaintiff's harm, causation is lacking. *Simon*, 426 U.S. at 42.[24]

In this case, the alleged injury – the increased risk (highly speculative, as it is) that the Central States Plan will default and Mr. Fletcher may not receive his pension benefits in the future – cannot reasonably be traced to the actions of Defendants. First, a simple (and, indeed, barely measurable) reduction in the value of plan assets is insufficient to establish causation; the risk of plan default must itself be "fairly traceable" to the defendant's conduct. *Lujan*, 504 U.S. at 590.

Moreover, it strains credulity to contend that the Plan's alleged multibillion-dollar deficit is traceable to the alleged conduct involving $1,577.93 of allegedly unauthorized and undisclosed trading profits. As the district court in *Fox* recently held, "[w]ithout a factual allegation" that defendants' conduct deprived the plan of funds such that "the [f]und's risk of default has materially increased," plaintiffs cannot establish causation under Article III. 2013 WL 6439128, at *7.[25] Here, as well, the alleged loss caused by Defendants has in no sense "materially increased" the risk of default. *Fox*, 2013 WL 6439128, at *7. Defendants' conduct could not possibly have caused the over $15 billion deficit the Central States Fund was already experiencing in 2009 – over a year *before* the Plan suffered any alleged loss in connection with

---

[24] *See also St. Pierre v. Dyer*, 208 F.3d 394, 401 (2d Cir. 2000) (Article III standing requires "there be a causal connection between the injury and the conduct complained of, *i.e.* that the injury be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (internal quotation marks and modifications omitted)).

[25] *See also Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1256-57 (D.N.M. 2011) (plaintiffs failed to establish causation under Article III because the asserted investment loss constituted only .5% of the total value of the fund; allegation that the "investment and the [d]efendants' actions 'exacerbated' already existing problems is not sufficient to establish this causal connection"), *appeal dismissed*, 702 F.3d 1220 (10th Cir. 2002).

Defendants' trades.  Indeed, the Plan's funding difficulties started long before 2009.  In any event, as Mr. Fletcher concedes, the Plan has *not been fully funded since at least 1998*, a full *thirteen years* before any of the allegedly wrongful conduct at issue.  (AC ¶ 26.)  While it is not possible here to unravel the innumerable causal factors giving rise to the Plan's funding deficit, it is clear that any "risk of default" by the Central States Plan was not caused by Defendants.

In sum, Mr. Fletcher cannot establish constitutional standing to bring claims on behalf of the Central States Plan, and all claims in the Amended Complaint, including those on behalf of the purported class of ERISA plans,[26] should be dismissed under Rule 12(b)(1).

> **3.      Mr. Fletcher Lacks Both Statutory and Constitutional Standing to Bring Claims on Behalf of Other Plans in Which He Is Not a Participant.**

If the Court concludes that Mr. Fletcher lacks Article III standing to pursue his claims, the Court's analysis can properly end here.  Even if this Court finds that Mr. Fletcher somehow has standing to bring claims on behalf of the Central States Plan, it should nonetheless dismiss the claims that Mr. Fletcher seeks to bring on behalf of the Other Plans in which Mr. Fletcher is not a participant because he lacks both statutory and constitutional standing as to them.

> **a.      Mr. Fletcher Lacks Statutory Standing Under ERISA to Bring Claims on Behalf of Other Plans in Which He Is Not a Participant.**

Mr. Fletcher purports to bring claims on behalf of "all ERISA plans" for which Defendants provided transition management and/or brokerage services where Defendants added

---

[26] Dismissal of Mr. Fletcher's claims on behalf of the Central States Plan likewise dispenses with his claims under the Other Plans he seeks to represent.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotation marks and citations omitted)); *see also Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) (named plaintiffs did not have standing to represent class for injuries named plaintiffs did not themselves suffer).

allegedly unauthorized and undisclosed markups and markdowns.  (AC ¶ 57.)  Mr. Fletcher, however, is a participant in only the Central States Plan.  (AC ¶¶ 1, 17, 24.)  ERISA does not allow suits on behalf of plans in which plaintiffs are not participants; rather, ERISA limits participants to suits challenging only the administration of their plans.  29 U.S.C. § 1132(a).  In relevant part, ERISA's civil enforcement provision authorizes suits only by a "participant."[27]  *Id.* ERISA, in turn, defines a "participant" by reference to his or her eligibility for benefits from a *particular plan* sponsored by a *particular employer*.  29 U.S.C. § 1002(7) (defining participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit . . . from an employee benefit plan *which covers employees of such employer . . .*" (emphasis added)).

Read together, and as courts in the Second Circuit hold, these provisions establish that an individual may bring suit under ERISA section 1132(a) only with respect to the plans from which he or she is or may become eligible to receive benefits – *i.e.*, those plans in which he or she participates.  ERISA does not authorize suits by participants to remedy alleged breaches of duties owed to other plans in which they do not participate, or related to plans from which they cannot receive benefits and as to which they have no legitimate interest.[28]  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (plaintiff must be a participant to have standing under ERISA); *Physicians Health Servs.*, 287 F.3d at 112, 120-21 ("Because Congress 'carefully drafted' § 1132, parties other than those explicitly named therein – plan participants,

---

[27] It is undisputed, for example, that Mr. Fletcher is not a fiduciary or beneficiary, and obviously he is not the Secretary of Labor.  29 U.S.C. § 1132(a).

[28] As discussed above, *see supra* at 15 n.16, Congress cannot define an injury in fact for purposes of Article III.  *See Lujan*, 504 U.S. at 576.  However, even if Congress were understood to possess such authority, it would clearly also be able to limit that standing by statute.  ERISA section 1132(a)(2) therefore represents Congress's decision to limit the standing of participants such that they may bring claims only against the specific plans in which they participate.

beneficiaries, and fiduciaries – may not bring suit"); *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (plaintiff lacked standing to sue for benefits under plan in which he did not participate because a plaintiff who "is neither a participant nor beneficiary of the plan under which his benefit claim arises . . . cannot bring suit under [ERISA section 1132]").  Mr. Fletcher, therefore, lacks standing to assert claims on behalf of any plan in which he was not a participant, beneficiary or fiduciary under the express terms of the statute, and the Court should dismiss those claims.

This Court has rejected similar attempts by ERISA plaintiffs to bring claims against plans in which they were not participants, beneficiaries or fiduciaries.  *See In re SLM Corp. ERISA Litig.*, No. 08-4334, 2010 WL 3910566, at *1 (S.D.N.Y. Sept. 24, 2010), *aff'd sub nom. Slaymon v. SLM Corp.*, 506 F. App'x 61, 65 (2d Cir. 2012).  In *SLM*, the plaintiffs participated only in the Sallie Mae 401(k) Savings Plan ("Savings Plan") and not the Sallie Mae 401(k) Retirement Savings Plan ("Retirement Plan").  Nonetheless, they attempted to bring a class action on behalf of both plans for claimed breaches of fiduciary duties under ERISA.  *Id.*  This Court dismissed the claims against the Retirement Plan for lack of subject matter jurisdiction under Rule 12(b)(1), finding in relevant part that the plaintiffs lacked statutory standing under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), to bring claims on behalf of a plan in which they did not claim to be participants, beneficiaries, or fiduciaries.  *Id.* at *12.

The Second Circuit affirmed this Court's dismissal of the plaintiffs' claims against the Retirement Plan, finding that:

> Plaintiffs were never participants in the Retirement Plan and lack constitutional standing to bring claims against fiduciaries of that Plan. Even though the fiduciaries for the two plans overlap, the plans have separate governing documents, and the decision not to divest the Retirement Plan of SLM stock must be viewed separately from the decision not to divest the Savings Plan of SLM stock.  A favorable ruling against the Retirement Plan fiduciaries requiring them

24

to compensate the aggrieved Retirement Plan participants would not guarantee a similar outcome for the aggrieved Savings Plan participants and, thus, would afford Plaintiffs no relief.  Moreover, Plaintiffs fail to allege any general harm that would be cured by granting injunctive relief to participants of the Retirement Plan.  Because Plaintiffs cannot satisfy redressability, they lack standing under Article III.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120-21 (2d Cir. 2009).

*Slaymon*, 506 F. App'x at 65.  The Second Circuit's reasoning in *Slaymon* as well as earlier precedent compel dismissal here.[29]

Likewise, in *In re Pfizer Inc. ERISA Litigation*, No. 04-10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009), the plaintiffs brought claims against a number of ERISA plans, including plans for employees located in Puerto Rico in which no named plaintiff was a participant or beneficiary.  This Court dismissed the plaintiffs' claims against the Puerto Rico plans, holding that the "[p]laintiffs lack standing to pursue their claims regarding the Puerto Rico Plans, as none of the [p]laintiffs is alleged to have been a participant in any of the Puerto Rico Plans."  *Id.* at *5.  Moreover, in *Gates v. United Health Group Inc.*, No. 11-3487, 2012 WL 2953050, at *9 (S.D.N.Y. July 16, 2012), this Court similarly jettisoned the plaintiff's claims for lack of subject matter jurisdiction, finding that the plaintiff lacked statutory standing under

---

[29] These summary orders are not binding on this Court, *see* 2d Cir. Local R. 32.1.1, but "they are nevertheless persuasive authority to the extent that their factual patterns align with the instant case and their reasoning is compelling."  *Anwar v. Fairfield Greenwich Ltd.*, 884 F. Supp. 2d 92, 97 (S.D.N.Y. 2012); *see also United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("Denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." (quoting Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1)); *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2012) ("The Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order."); *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) ("[A] summary order has no precedential effect on any court, although it has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion.").

ERISA to "pursue claims on behalf of a class, which relate to any ERISA plan . . . in which she was not a participant or beneficiary." (internal quotation marks and alterations omitted).[30]

That Mr. Fletcher asserts his claims as a class action does not confer standing where none exists.  It is axiomatic that Rule 23 cannot expand statutory rights.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'"); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (same); Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts . . .").  Thus, whether a claim is brought individually or as a putative class action is irrelevant to the question of Mr. Fletcher's standing to assert claims on behalf of the Other Plans.  *See, e.g.*, *Lewis*, 518 U.S. at 357 ("That a suit may be a class action . . . adds nothing to the question of standing."); *Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action.").  The fact that Mr. Fletcher has brought this suit as a putative class action cannot alter the conclusion that he lacks statutory standing to sue on behalf of any plan other than the Central States Plan.

Because Mr. Fletcher lacks statutory standing under ERISA to bring claims on behalf of the Other Plans, those claims should be dismissed under Rule 12(b)(1).[31]

---

[30] Other courts have rejected similar attempts by class action plaintiffs to bring claims on behalf of plans in which they do not participate.  *See, e.g.*, *Hastings v. Wilson*, 516 F.3d 1055, 1061 (8th Cir. 2008) (plaintiffs lacked statutory standing to assert ERISA fiduciary breach claims on behalf of pension plan of which they were neither participants nor beneficiaries and cannot use the class action vehicle to confer standing); *Acosta v. Pac. Enters.*, 950 F.2d 611 (9th Cir. 1991) (plaintiff lacked standing to challenge decisions affecting ERISA plans in which he does not participate); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010) (class action plaintiffs, participants in an ERISA 401(k) plan, lacked both statutory and constitutional standing to assert claims on behalf of a second ERISA 401(k) plan in which they were not participants and for which they could not establish an injury in fact); *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 653-54 (S.D. Tex. 2004) (class plaintiff lacked standing to bring claims on behalf of plans in which he was never a participant, beneficiary, or fiduciary).

b.   **Mr. Fletcher Lacks Constitutional Standing Under Article III to Assert Claims on Behalf of Any ERISA Plan Other Than the Central States Plan.**

Again, even if Mr. Fletcher did have statutory standing to sue on behalf of the Other

Plans (which he does not), he must, of course, also have constitutional standing to do so.

*Kendall*, 561 F.3d at 118; *Cent. States*, 433 F.3d at 201.  Here, Mr. Fletcher is similarly unable to

establish standing under Article III for the claims he brings on behalf of the Other Plans in the

putative class.

(1)   **Mr. Fletcher Alleges No Injury in Fact Related to the Other Plans.**

Claims of injury to the Other Plans suffer from the same infirmities as the claims brought

on behalf of Mr. Fletcher's own plan.  First, Mr. Fletcher fails to allege that any participant or

beneficiary in the Other Plans failed to receive benefits.  Second, in describing the alleged injury

to the Other Plans, the Amended Complaint asserts only generically that "the other Class

members and their plans suffered economic losses as a result of Defendants' conduct."  (AC

¶ 44; *see also* AC ¶ 43.)  The Amended Complaint does not allege – as it does for the Central

States Plan and the Teamsters Plan – that Defendants' conduct caused the Other Plans to suffer

---

[31] Similarly, Mr. Potter lacks statutory standing under ERISA to bring claims on behalf of the Other Plans.  As discussed above, ERISA's civil enforcement provision authorizes suits by a "fiduciary," 29 U.S.C. § 1132(a), which, in turn, is defined strictly in terms of either the persons explicitly named as fiduciaries in an individual ERISA plan's documents, 29 U.S.C. § 1102(a)(2), or else a person who acquires the status of a "functional fiduciary" by virtue of the services he or she performs for that individual plan, 29 U.S.C. § 1002(21)(A).  *See id.* ("A person is a fiduciary *with respect to a plan*" to the extent that he or she exercises certain described authority or responsibility for that plan. (emphasis added)).  Therefore, a person may bring suit under ERISA section 1132(a) only with respect to the plans for which that person functions as a fiduciary.  ERISA does not authorize suits by fiduciaries of one plan to remedy alleged breaches of duty owed to plans for which the person is not a fiduciary.  *See Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14-15 (2d Cir. 1991) (even former fiduciary of plan was not authorized under section 1132(a) to bring ERISA action on behalf of plan); *Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir. 1979) (former fiduciary was not authorized to bring suit on behalf of plan even when he was removed for the purpose of preventing the entity from bringing suit).  Mr. Potter therefore lacks standing to assert claims on behalf of any plan to which he is not a fiduciary.  Accordingly, even if this Court declines to enter summary judgment for Defendants as to Mr. Potter's claims and declines to dismiss Mr. Potter's claims for lack of constitutional standing under Article III, the Court should nonetheless dismiss Mr. Potter's claims on behalf of the Other Plans for lack of subject matter jurisdiction under Rule 12(b)(1).

losses that "increased the risk" that participants' future benefits will not be paid.  (AC ¶ 43.)  It does not because it cannot.

More specifically, the Amended Complaint details the underfunding of the Central States Plan, presumably to support Mr. Fletcher's contention that Defendants' conduct materially increased that Plan's risk of default.  Conspicuously missing are any similar factual allegations regarding the funded status of any of the Other Plans he hopes to represent.  Indeed, the Amended Complaint is silent on the financial status of any plan other than the Central States Plan and the Teamsters Plan and silent on the amount of allegedly unauthorized markups and markdowns charged to each plan.  And Mr. Fletcher makes no effort at all to establish that each of the Other Plans is at risk of default.  This is yet another reason why the claims on behalf of the Other Plans must be dismissed since several courts have recently held that, where a pension plan is fully funded, a participant claiming a breach of ERISA's fiduciary duties cannot establish an injury in fact for purposes of constitutional standing.  *See, e.g.*, *Alphin*, 704 F.3d at 338 (no injury in fact where alleged risk that the currently overfunded pension plan would, at some subsequent date, terminate in an underfunded state and the Pension Benefit Guaranty Corporation would be unable to pay full benefits was "insufficiently concrete and particularized"); *McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1085-87 (8th Cir. 2009) (plaintiff established no injury in fact because the plan's funding surplus was sufficiently large that the rights of participants and beneficiaries were fully protected); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 907 (8th Cir. 2002) (same).

(2) **Mr. Fletcher Cannot Establish That Defendants Caused Any Alleged Injury to the Other Plans, or That Such Injury Could Be Redressed by a Favorable Decision of This Court.**

Mr. Fletcher also cannot meet the redressability and causation requirements under Article III related to the Other Plans. Even if Mr. Fletcher were to sufficiently allege an injury in fact based on an increased risk that the Other Plans will not be able to pay future pension benefits, Mr. Fletcher has not established that those injuries are likely to be redressed by the sought-after relief. *See Warth*, 422 U.S. at 508; *Kendall*, 561 F.3d at 118.

First, the Amended Complaint fails to present any factual allegations whatsoever supporting an inference – much less establishing – that the requested relief will reduce the risk that any of these other ERISA plans might default and fail to pay their promised benefits. Mr. Fletcher has not even alleged that any of the Other Plans is at risk of default.

Second, the significant differences across the Other Plans Mr. Fletcher seeks to represent further demonstrate that a ruling in Mr. Fletcher's favor would not redress alleged injuries to the Other Plans. *See Slaymon*, 506 F. App'x at 65 (a "favorable ruling" against one set of plan fiduciaries "would not guarantee a similar outcome" against the fiduciaries of a second plan because the plans had separate governing documents and made factually distinct decisions with regard to whether to divest the plan of specific stock). Here, although Defendants may have performed securities execution services for multiple ERISA plans and/or their asset managers, significant differences no doubt exist between each of these plans, as Mr. Fletcher concedes, in terms of their contractual relationships with Defendants, their respective governing documents, the nature of the disclosures provided to them, and the types and circumstances surrounding the

29

securities they traded.[32]  Due to the significant differences among the ERISA plans that employed Defendants' services, a favorable ruling arising out of Defendants' conduct toward any one of the Other Plans would not "guarantee a similar outcome" to other ERISA plan participants "and, thus, would afford Plaintiff[] no relief."  *Id*.

Finally, Mr. Fletcher fails to allege a single fact to suggest that any injury purportedly suffered by participants in the Other Plans was caused by Defendants' conduct.  Without alleging the current funded status of the Other Plans, for instance, or providing any quantification at all of the alleged harm to each of the Other Plans, Mr. Fletcher cannot plausibly connect any actual or increased risk of plan default (if one even exists).  Failing to allege the requisite causation, Mr. Fletcher also fails to establish Article III standing with respect to the Other Plans.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant summary judgment for Defendants on each of Mr. Potter's claims and should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice for lack of subject matter jurisdiction.

---

[32] For instance, the SEC Order attached to the Complaint as Exhibit 1 states that Defendants handled certain client trades on a fiduciary basis.  In those instances, the SEC found that Defendants, among other things, did not take the undisclosed markups and markdowns that are the subject of this litigation.  (SEC Order ¶ 7 n.6.)  The SEC Order further describes various marketing materials and customer disclosures that came in "several versions" and "expanded over time."  (SEC Order ¶ 17.)

Dated: June 9, 2014
       New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By:    /s/ Melissa. D. Hill
      Brian T. Ortelere
      Jeremy P. Blumenfeld
      Melissa D. Hill
      101 Park Avenue
      New York, NY 10178-0060
      Telephone: (212) 309-6000
      Facsimile: (212) 309-6001
      E-mail: bortelere@morganlewis.com
            jblumenfeld@morganlewis.com
            melissa.hill@morganlewis.com

*Attorneys for Defendants*