**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDRICK P. POTTER, JR., LANDOL FLETCHER AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> CONVERGEX GROUP LLC, CONVERGEX EXECUTION SOLUTIONS LLC, CONVERGEX GLOBAL MARKETS LTD., CONVERGEX HOLDINGS LLC, G-TRADE SERVICES LLC, & DOES 1-10, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : CIVIL ACTION No. 13-cv-9150 (LLS) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND BACKGROUND ................................................................. 1

II.  ARGUMENT ......................................................................................................... 4

    A.  Mr. Fletcher Has Suffered No Cognizable Injury in Fact That Is Likely to Be Redressed by a Favorable Decision in This Case. ............................................ 4

        1.  Mr. Fletcher Cannot Establish an Actual or Imminent Injury in Fact. ........................................................................................................ 5

        2.  Mr. Fletcher Cannot Establish That His Threatened Injury Was Caused by Defendants' Alleged Misconduct. ........................................ 9

        3.  Mr. Fletcher Cannot Establish That His Threatened Injury Is Likely to Be Redressed by the Relief He Seeks. ..................................... 11

    B.  Plaintiff Cannot Dispense With the Requirement of Demonstrating an Actual or Imminent Injury in Fact. .................................................................... 12

        1.  A Statutory Violation in Itself Is Insufficient to Confer Standing. .......... 12

        2.  Plaintiff's Attempt to Rebrand Monetary Claims as Equitable Relief Likewise Fails. ............................................................................. 14

        3.  This Court Should Reject Plaintiff's Attempt to Create "Representational Standing." ................................................................... 17

        4.  Plaintiff's Reliance on Trust Law Is Misplaced. ..................................... 21

    C.  Mr. Fletcher Lacks Statutory Standing to Bring Claims on Behalf of Other Plans in Which He Is Not a Participant. ............................................................. 23

III.  CONCLUSION ...................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allen v. Wright,*
    468 U.S. 737 (1984)....................................................................................................4

*Amara v. CIGNA Corp.,*
    925 F. Supp. 2d 242 (D. Conn. 2012)......................................................................15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*
    *L.L.C.*
    (*"Central States I"*), 433 F.3d 181 (2d Cir. 2005) ......................................13, 15, 21

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care,*
    *L.L.C.*
    (*"Central States II"*), 504 F.3d 229 (2d Cir. 2007).........................................20, 21

*CIGNA Corp. v Amara,*
    131 S. Ct 1866 (2011)...............................................................................14, 15, 16, 17

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013).........................................................................................5, 6, 8

*Constellation Energy Commodities Grp., Inc. v. FERC,*
    457 F.3d 14 (D.C. Cir. 2006) ......................................................................................8

*David v. Alphin,*
    704 F.3d 327 (4th Cir. 2013) ............................................................................ passim

*DeRosa v. U.S. Dep't of Hous. & Urban Dev.,*
    787 F.2d 840 (2d Cir. 1986)........................................................................................8

*Edmonson v. Lincoln Nat'l Life Ins. Co.,*
    725 F.3d 406 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014).......................16

*Faber v. Metro. Life Ins. Co.,*
    648 F.3d 98 (2d Cir. 2011).................................................................................14, 15

*Fallick v. Nationwide Mutual Insurance Co.,*
    162 F.3d 410 (6th Cir. 1998) ............................................................................25, 26

*Financial Institutions Retirement Fund v. Office of Thrift Supervision*
    (*"FIRF"*), 964 F.2d 142 (2d Cir. 1992)...............................................................12, 13

*Forbush v. J.C. Penney Co.,*
    994 F.2d 1101 (5th Cir. 1993) ..........................................................................25, 26

*Fox v. McCormick*,
20 F. Supp. 3d 133, 142 (D.D.C. 2013) ......................................................7, 13, 17

*Gates v. United Health Grp. Inc.*,
No. 11-3487, 2012 WL 2953050 (S.D.N.Y. July 16, 2012)....................................25

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
465 F.3d 1123 (9th Cir. 2006) ...................................................................... passim

*Harley v. Minn. Mining & Mfg. Co.*,
284 F.3d 901 (8th Cir. 2002) ......................................................................... passim

*Hastings v. Wilson*,
516 F.3d 1055 (8th Cir. 2008) ...............................................................................24

*Hastings v. Wilson*,
No. 05-2566, 2007 WL 333617 (D. Minn. Feb. 1, 2007), *aff'd*, 516 F.3d 1055 (8th
Cir. 2008) ..............................................................................................................26

*Hill v. Vanderbilt Capital Advisors, LLC*,
834 F. Supp. 2d 1228 (D.N.M. 2011) ...............................................................10, 12

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013)........................................................................................18, 22

*Horvath v. Keystone Health Plan*,
333 F.3d 450 (3d Cir. 2003)....................................................................................16

*Hughes Aircraft Co. v Jacobson*,
525 U.S. 432 (1999)....................................................................................5, 16, 22, 23

*In re Eaton Vance Corp. Secs. Litig.*,
220 F.R.D. 162 (D. Mass. 2004)..............................................................................26

*In re Medco Health Solutions, Inc. Pharmaceutical Benefits Management Litigation*
("*Central States 1.5*"), No. 03-1508, slip op. (S.D.N.Y. Aug. 11, 2006) ................21

*In re Reliant Energy ERISA Litig.*,
336 F. Supp. 2d 646 (S.D. Tex. 2004) ....................................................................26

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ................................................................................25

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
561 F.3d 112 (2d Cir. 2009)........................................................................13, 15, 21

*L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*
("*LIHS*"), 710 F.3d 57 (2d Cir. 2013) .............................................................................. 19, 21

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) .......................................................................................................... 5

*LaScala v. Scrufari*,
479 F.3d 213 (2d Cir. 2007) ............................................................................................ 14

*Loren v. Blue Cross & Blue Shield of Mich.*,
505 F.3d 598 (6th Cir. 2007) ............................................................................... 5, 18, 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................. passim

*Malkani v. Clark Consulting, Inc.*,
727 F. Supp. 2d 444 (D. Md. 2010), *aff'd*, 441 F. App'x 164 (4th Cir. 2011) ............... 12

*McCullough v. AEGON USA, Inc.*,
585 F.3d 1082 (8th Cir. 2009) .................................................................................. 14, 18

*Merrimon v. Unum Life Ins. Co. of Am.*,
758 F.3d 46 (1st Cir. 2014), *cert. denied*, 135 S. Ct. 1182 (2015) .................................. 16

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs Co.*,
693 F.3d 145 (2d Cir. 2012) ("*NECA*") ..................................................................... 26, 27

*New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Em'prs Int'l Longshoremen's Ass'n AFL–CIO Pension Fund*,
No. 07–6349, 2008 WL 215654 (E.D. La. Jan. 24, 2008) ............................................... 17

*Palmason v. Weyerhaeuser Co.*,
No. 11-0695, 2013 WL 4511361 (W.D. Wash. Aug. 23, 2013) ........................................ 7

*Pender v. Bank of Am. Corp.*,
No. 14-1011, 2015 WL 3541927 (4th Cir. June 8, 2015) ................................................ 16

*Perelman v. Perelman*,
No. 14-1663, 2015 WL 4174537 (3d Cir. July 13, 2015) .......................................... 5, 16, 17, 18

*Raines v. Byrd*,
521 U.S. 811 (1997) .......................................................................................................... 12

*Retirement Board of the Policemen's Annuity & Benefit Fund of the City Of Chicago v. Bank Of New York Mellon*,
Nos. 13-1776, 13-1772, 2014 WL 9860557 (2d Cir. Dec. 23, 2014) ......................... 26, 27

*Scanlan v. Eisenberg*,
  669 F.2d 838 (7th Cir. 2012) ............................................................23

*Sec'y of the Interior v. California*,
  464 U.S. 312 (1984) ........................................................................20

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ...........................................................................9

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008) .....................................................................20, 22

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014) ...................................................................6, 8

*Vander Luitgaren v. Sun Life Ins. Co. of Can.*,
  No. 09-11410, 2010 WL 4722269 (D. Mass. Nov. 18, 2010) ................16

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) .........................................................................22

*Warth v. Seldin*,
  422 U.S. 490 (1975) .........................................................................11

**STATUTES**

29 U.S.C. § 1106 ..............................................................................14

29 U.S.C. § 1109(a) ..........................................................................24

29 U.S.C. § 1132(a) ..........................................................................24

29 U.S.C. § 1132(a)(3) .......................................................................24

Defendants ConvergEx Group, LLC ("Group"), ConvergEx Execution Solutions LLC ("CES"), ConvergEx Global Markets Limited ("CGM"), ConvergEx Holdings, LLC ("Holdings"), and G-Trade Services LLC ("G-Trade")[1] (collectively, "Defendants") submit this reply brief in further support of their Motion to Dismiss Plaintiff's Amended Complaint (Dkts. 21-24).

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Landol D. Fletcher ("Plaintiff" or "Mr. Fletcher") originally filed this action in December 2013 asserting fiduciary breach claims against Defendants related to alleged unauthorized markups and markdowns on trades of securities routed to CGM, a Bermuda affiliate, between October 2006 and December 2011.  (Dkt. 1.)  Defendants moved to dismiss the original complaint, establishing that Mr. Fletcher lacked both constitutional and statutory standing to pursue his claims because, *inter alia*, he has not suffered and will not suffer any injury.  More specifically, Defendants demonstrated that Mr. Fletcher had not yet been denied any benefit by the Central States Plan (the "Plan"), the defined benefit pension plan in which he participates, and further that the Plan itself was impacted only to the tune of $1,577.93 by the alleged illegal scheme.

Rather than respond to Defendants' standing challenge, Mr. Fletcher's counsel sought out another plaintiff – Frederick J. Potter, Jr., a named fiduciary to the Teamsters Local 469 Pension Plan (the "Teamsters Plan") – in hopes of filing an Amended Complaint that could overcome the fatal standing deficiencies of Mr. Fletcher's claim.  Defendants responded by demonstrating again Mr. Fletcher's lack of standing and proving further that neither Mr. Potter nor his

---

[1] Convergex Global Markets Limited and G-Trade Services LLC no longer exist as they were merged into other entities effective February 20, 2015 and April 1, 2015, respectively. Defendants reserve all objections and arguments as to the propriety of entities named as Defendants in this litigation.

Teamsters Plan had been affected at all.  (*See* Dkt. 30 at 6-8, 15-22; Dkt. 32 ¶¶ 7-13, Ex. A.)
Unwilling to accept Defendants' representations in that regard, Plaintiff insisted on conducting
jurisdictional discovery in hopes of refuting Defendants' factual demonstration.  After
approximately ten months of exhaustive – and ultimately fruitless for Plaintiff – jurisdictional
discovery, including several extensions from this Court to allow Plaintiff's counsel to complete
their investigation, the facts have not changed:  Mr. Fletcher's Plan incurred only $1,577.93 of
allegedly undisclosed markups and markdowns and Mr. Potter's Teamsters Plan was not
impacted in any manner.[2]  Forced to acknowledge these facts, Plaintiff voluntarily dismissed Mr.
Potter's claims on behalf of the Teamsters Plan.  (Dkt. 47.)

Plaintiff now attempts to resuscitate the same claims he originally filed some nineteen
months ago, despite the fact that, as a participant in a defined benefit plan who has not been
denied his benefit, he cannot establish the required elements of constitutional standing to pursue
his claims.  First, nowhere does Plaintiff allege he has suffered an *actual* injury to date.  Instead,
he focuses on the financial state of the Plan and claims that the $1,577.93 of alleged improper
charges – not the $16 billion funding deficit that existed long before these charges – has put his
future benefit at risk of nonpayment.  Thus, his injury, properly stated, is the risk that the Plan
will default and fail to pay him benefits at some undetermined point in the future.  This purely

---

[2] Plaintiff faults Defendants for declining to produce information related to the Fair Fund during
the course of jurisdictional discovery.  (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss, Dkt. 45
("Opp.") at 4 n.8.)  As Plaintiff notes, Defendants maintained that information related to the Fair
Fund and any potential recovery therefrom did *not* form the factual basis for their motion to
dismiss for lack of standing under Rule 12(b)(1) (and, indeed, was mentioned in Defendants'
opening brief only in a footnote (*see* Dkt. 30 at 17 n.17)).  Accordingly, the information related
to the Fair Fund was appropriately outside the scope of jurisdictional discovery.  In fact, to
alleviate Plaintiff's concerns, in October 2014, Defendants offered to revise the footnote
contained in Defendants' brief in a manner acceptable to Plaintiff to present only the fact of the
Fair Fund's existence, which is undisputed, and to not present the information as argument in
support of dismissal.  Plaintiff refused to respond to Defendants' proposal.

speculative harm cannot suffice for Article III standing.  Next, Mr. Fletcher cannot plausibly or credibly allege that the loss of $1,577.93 could be the cause of that default were it even to occur. Finally, there is no likelihood that Mr. Fletcher's requested relief of $1,577.93 could ever redress the Plan's $16 billion underfunding and somehow stave off the risk of future default.

Mr. Fletcher cannot respond to these arguments.  Rather than address the points directly, he attempts to restate the injury at issue and as pled, and accuses Defendants of mischaracterizing his claims when he, in fact, has done just that.  Specifically, Plaintiff now states, contrary to the complaint's allegations, that he hopes to pursue claims on behalf of the Plan only.  (Opp. at 1; Compl. ¶¶ 43-45.)  In doing so, Mr. Fletcher effectively concedes he has not been injured himself and instead claims that he has "representational standing" to bring claims on behalf of the Plan to recover the $1,577.93 in alleged losses to the Plan.  This theory, however, has never been endorsed by the Second Circuit or any other court of appeal, and has been expressly rejected by at least four other circuits.  This Court should not accept Plaintiff's invitation to create new law in order to allow his claims to proceed.  Nor should the Court be persuaded that merely alleging a statutory violation can satisfy the injury-in-fact requirement; indeed, other courts have considered and rejected exactly this argument in the context of defined benefit plans, finding that it inappropriately conflates statutory and constitutional standing. Because Mr. Fletcher cannot establish constitutional standing, this Court lacks subject matter jurisdiction to hear Mr. Fletcher's claims, compelling dismissal under Rule 12(b)(1).

Likely recognizing the fatal flaws in his standing argument, Plaintiff focuses on the so-called merits of his claim, and falsely accuses Defendants of conceding the "facts" underlying such allegations.  (Opp. at 3.)  Of course, Defendants have done no such thing.  Rather, and as required under the Federal Rules of Civil Procedure, Defendants have accepted Plaintiff's

alleged "facts" as true – which have nothing to do with Defendants' present standing challenge – and moved pursuant to Rule 12(b)(1) to dismiss the complaint for lack of jurisdiction. Compounding this disingenuous ploy, Plaintiff attaches to his Opposition and cites documents well outside the four corners of the Amended Complaint and the scope of the jurisdictional inquiry.  (*See* Dkt. 45 at 2-4; Dkt. 46 at Exs. D-H.)  Plaintiff no doubt hopes to distract the Court from the singular legal issue – Plaintiff's lack of standing – by resorting to inflammatory and sensational allegations of wrongdoing in a transparent attempt to dissuade the Court from dismissing the litigation for want of an actual case or controversy.[3]

Nor can Plaintiff pursue the class claims he asserts.  First, without an injury of his own, he cannot pursue claims on behalf of other ERISA plans, or their participants or beneficiaries. Second, even if Plaintiff could establish standing for himself – which he cannot – he lacks statutory standing to pursue relief on behalf of plans in which he plainly does not participate. Accordingly, the Court should dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction.

## II.   ARGUMENT

### A.   Mr. Fletcher Has Suffered No Cognizable Injury in Fact That Is Likely to Be Redressed by a Favorable Decision in This Case.

Mr. Fletcher lacks constitutional standing under Article III to bring claims on behalf of the Central States Plan.  To establish constitutional standing, Plaintiff must demonstrate (1) an "actual or imminent" injury in fact, (2) causality, and (3) redressability.  *Allen v. Wright*, 468

---

[3] In doing so, Plaintiff ignores several factual hurdles he will face even if his claims survive the motion to dismiss.  For example, Plaintiff will be hard pressed to demonstrate that any, let alone all, of the Defendants named in the action functioned as fiduciaries to the Plan when the Plan was not a direct client of any of the Defendants.  (*See, e.g.*, Dkt. 32 ¶ 5.)

U.S. 737, 751 (1984).  Despite ten months of jurisdictional discovery, Mr. Fletcher has not established even one of these constitutional requirements.

### 1.   Mr. Fletcher Cannot Establish an Actual or Imminent Injury in Fact.

As explained in Defendants' opening brief, standing is an "irreducible constitutional minimum" under Article III's case-or-controversy requirement.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Constitutional standing requires an injury that is "concrete, particularized, and actual or imminent."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  Courts have consistently held that a loss that merely affects plan assets is insufficient to confer standing under Section 409 of ERISA, 29 U.S.C. § 1109.[4]  For defined benefit plans like the Central States Plan, a decrease in the value of plan assets, as Mr. Fletcher alleges here, does not necessarily result in an injury in fact because the benefit amount is fixed regardless of the value of assets in the plan.  "[T]he employer typically bears the entire investment risk and – short of the consequences of plan termination – must cover any underfunding as the result of a shortfall that may occur from the plan's investments."  *Hughes Aircraft Co. v Jacobson*, 525 U.S. 432, 439 (1999).  Therefore, a decrease in the amount of plan assets "will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008).

---

[4] *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1126-27 (9th Cir. 2006); *Perelman v. Perelman,* No. 14-1663, 2015 WL 4174537, at *4 (3d Cir. July 13, 2015); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007) (applying rule in context of welfare benefit plan).

Conceding that Mr. Fletcher has not suffered any *actual* harm to his pension benefits, Plaintiff instead contends that there is a "slight increased risk" that he will not receive the full amount of his promised benefits as a result of Defendants' alleged misconduct.  (Opp. at 21.)  Specifically, Plaintiff asserts that the alleged loss of $1,577.93 to the Plan "creates a *small*, but concrete increase in the risk that Fletcher will not receive all the benefits to which he is entitled, and increases the risk that any reduction in benefits will be greater than it otherwise would be."  (Opp. at 17 (emphasis added).)   This cannot suffice to create an injury in fact for Article III standing.

While courts are sometimes required to assess whether a threatened *future* injury is "imminent" enough to constitute an injury in fact, there are strict limits on what might suffice to convey standing.  As the Second Circuit explained in *Baur v. Veneman*, "the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur."  352 F.3d 625, 632 (2d Cir. 2003).  Plaintiff concedes that courts require, at a *minimum*, that there be a "substantial risk that the harm will occur" before an injury is established.  (Opp. at 16 (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).)  As the Supreme Court recently noted in *Clapper*, a "theory of *future* injury" may be "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'"  133 S. Ct. at 1143 (emphasis added) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Tellingly, however, Mr. Fletcher nowhere asserts that the loss of his pension benefit is itself "certainly impending," *id*., or that there is a "substantial risk" that his Plan will default and imperil that benefit, *Driehaus*, 134 S. Ct. at 2341.  Plaintiff leaves Defendants' arguments in that regard entirely unopposed.  Rather, Plaintiff points only to what he charitably calls the "small but

concrete" or "slight" increased risk of not receiving his full pension benefit and claims that this is enough to confer constitutional standing.  (Opp. at 17, 21.)  Plaintiff's argument stands Article III jurisprudence on its head.  Although he variably admits that his alleged injury must reach a required threshold (e.g., whether the "identifiable trifle" or "a substantial risk"), he then reframes his so-called injury in absolute terms that dispense with any consideration of size or severity.[5] Courts that have considered participant standing have rejected this absolutist approach in favor of the requirement that the alleged injury be sufficiently "concrete and particularized," "imminent and tangible" to constitute an injury in fact.[6]   More to the point, if the creation of *any* increase in the amount of risk, however "small" or "slight," were sufficient to constitute an injury in fact, as Plaintiff contends, then it would be meaningless to analyze whether there is a "substantial risk" of harm or, conversely, a negligible risk of harm – for *any conduct creating risk would be enough for constitutional standing*.  This is not the law.  To treat the *risk* of future injury as if it were the injury itself would be to short-circuit the constitutional analysis.  Courts have rejected exactly this line of reasoning, as the Fourth Circuit did in *Alphin*, noting that "these

---

[5] Specifically, in place of the requisite constitutional analysis, Plaintiff substitutes the "fundamentals of bookkeeping," claiming he has suffered a cognizable injury in fact because "the less money in the Central States Plan, the less money the Central States Plan has to pay benefits to participants."  (Opp. at 17-18.)  Under this logic, *any* monetary harm to an ERISA plan would similarly damage its participants and give rise to standing.  Yet Plaintiff can cite no case law in support of this proposition.

[6] *See Alphin*, 704 F.3d at 338 (rejecting argument that "any drain of assets from a defined benefit pension plan" constitutes an injury in fact regardless of the plan's funding status or actual risk of lost benefits and finding that the risk of a future loss of benefits is "too speculative to give rise to Article III standing"); *Fox v. McCormick*, 20 F. Supp. 3d 133, 142 (D.D.C. 2013) (plaintiffs alleged no individual injury in fact because they failed to allege that the "Fund's risk of default has materially increased" such that a future loss of participant benefits was no longer merely speculative); *Palmason v. Weyerhaeuser Co.*, No. 11-0695, 2013 WL 4511361, at *1 (W.D. Wash. Aug. 23, 2013) (finding participants lacked constitutional standing because they "failed to show that the alleged diminution in the value of the plan assets posed a threat to plaintiffs' interests or that a damage award in favor of the plan would in any way benefit them").

risk-based theories of standing [are] unpersuasive" because they rest on "a highly speculative foundation lacking any discernible limiting principle."  704 F.3d at 338.[7]

As Defendants previously explained, Plaintiff's so-called injury remains entirely "conjectural" and "hypothetical."  (*See* Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Am. Compl. & Mot. for Summ. J. ("Mem.") at 13-17.)  In particular, Mr. Fletcher does not contend that even a single dollar of benefits has not been paid to him.  Moreover, because the Central States Plan is a multiemployer plan, other plan sponsors and contributing employers would be obligated to cover any shortfall in the event that Plan insolvency did occur.  *See Alphin*, 704 F.3d at 338.  Further, the Pension Benefit Guaranty Corporation ("PBGC") guarantees vested benefits up to a statutory minimum in the case of a plan's default, and Mr. Fletcher does not allege that his benefit exceeds the coverage limit.

In response, Plaintiff argues that, under the so-called "collateral source" rule, this Court must ignore the fact of any coverage provided by the PBGC that might prevent Mr. Fletcher

---

[7] Plaintiff relies on two cases for the proposition that "an increased risk of future non-payment" is sufficient for an individual injury in fact.  (Opp. at 16.)  But neither case involved ERISA claims and both confronted far different constitutional and factual issues with little relevance to the case at hand.  *See DeRosa v. U.S. Dep't of Hous. & Urban Dev.*, 787 F.2d 840, 842-43 (2d Cir. 1986) (decided seven years before *Lujan* and finding in a footnote that low-income residents had constitutional standing to bring claims against city in part because they resided in city and so could "demonstrate injury" because the challenged various community development grants used to fund hotel construction "put[] at risk . . . funds otherwise intended" for community housing projects that would benefit plaintiffs); *Constellation Energy Commodities Grp., Inc. v. FERC*, 457 F.3d 14, 20 (D.C. Cir. 2006) (Southern California Edison had Article III standing based on the "increased risk of non-recovery" created if Edison were to lose access to collateral securing a debt Constellation owed to it).  Yet, both *DeRosa* and *Constellation* are beside the point. Defendants do not dispute that a risk of future injury can establish Article III standing when that injury is "imminent," *Lujan*, 504 U.S. at 560, is "certainly impending," *Clapper*, 133 S. Ct. at 1143, and presents a "substantial risk" that it will occur, *Driehaus*, 134 S. Ct. at 2341.  Neither case, however, supports Plaintiff's actual claim here – namely, that any increase in the risk of a future injury is sufficient to establish Article III standing *by itself*, regardless of whether the injury itself is "imminent" or "speculative."

from suffering the loss of any benefits.  Plaintiff misses the point.  Defendants do not contend

that, because the PBGC provides a collateral source, Plaintiff has not been harmed.  Rather, and

as the Fourth Circuit explained in *Alphin*, PBGC recovery is relevant to, and dispenses with, the

question of whether a risk-based theory of injury can suffice to establish standing in this context.

704 F.3d at 338 (finding that, even in the case of an underfunded plan and insolvent plan

sponsor, a participant's vested benefits are guaranteed up to a statutory minimum, and, therefore,

the risk that future benefits will be adversely affected is too speculative to give rise to Article III

standing).

### 2.    Mr. Fletcher Cannot Establish That His Threatened Injury Was Caused by Defendants' Alleged Misconduct.

Even assuming *arguendo* that there could be a "certainly impending" loss of benefits

here, Plaintiff has failed to establish that Defendants' alleged misconduct could plausibly be the

*cause* of those lost benefits.  It strains credulity to contend that, in the face of a $16 billion

shortfall in Plan funding, the loss of $1,577.93 can seriously be seen as the cause of the Plan's

future default.  Any such potential default is plainly the result of the massive underfunding

caused, not by Defendants, but by "some third party not before the court."  *Simon v. E. Ky.

Welfare Rights Org.*, 426 U.S. 26, 42 (1976) (rejecting plaintiff's Article III standing after

finding that "[i]t was purely speculative" whether the alleged injury "fairly can be traced" to

defendants' actions or whether they could equally have been caused by the independent actions

of third parties).

Relying upon a mischaracterization of Mr. Fletcher's injury, Plaintiff argues that there is

clearly causality because "Fletcher's individual injury in terms of increased risk . . . is a direct

result of this loss [of $1,577.93]."  (Opp. at 22.)  Plaintiff's argument reduces the constitutional

requirements of Article III to a tautology:  once Mr. Fletcher's injury is incorrectly defined as the

"slight increased risk" rather than the substantial risk the law requires, it would go without saying that the $1,577.93 loss is the direct and only cause of that "risk" (as that "risk" has been defined in advance as exclusively the risk caused by this specific alleged loss).

Taking Plaintiff at his word and assuming that default of the Plan is "certainly impending" as a result of its current level of underfunding, then the "slight increased risk" caused by Defendants' alleged conduct can be calculated precisely.  As set forth in Defendants' opening papers and left uncontested by Plaintiff, the Plan was underfunded in 2012 by approximately $16.08 billion.  (Dkt. 31-1 at 1.)  Without the alleged loss, the Plan's total assets in 2012 would have been $18,829,347,330.93; the alleged $1,577.93 loss would thus represent a 0.00000008 percent diminishment of those overall assets.  And without the alleged loss, the Plan would have been underfunded by exactly $16,085,296,617 in 2012.  Therefore, the alleged loss of $1,577.93 would be accountable for 0.0000001 percent of the Plan's total underfunding for that year.[8]  Plaintiff cannot plausibly allege that this loss is, in fact, the actual cause of any future loss of benefits, and for this reason his claims fail to have standing under Article III.  *See Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1256-57 (D.N.M. 2011) (plaintiffs failed to establish causation under Article III because the asserted investment loss constituted only 0.5 percent of the total value of the fund; allegation that the "investment and the [d]efendants' actions 'exacerbated' already existing problems is not sufficient to establish this causal connection").  Moreover, the Central States Plan has over 400,000 participants and beneficiaries, and the 0.0000001 percent loss would be spread across the entire population.

---

[8] This calculation assumes that the alleged losses to the Central States Plan were all incurred in plan year 2012.  As the data depicts, the alleged losses of $1,577.93 were spread across 2010 and 2011 (*see* Dkt. 32 ¶¶ 7-13, Ex. A), and, therefore, the relative impact on the funded status would have been even less year over year.

### 3.     Mr. Fletcher Cannot Establish That His Threatened Injury Is Likely to Be Redressed by the Relief He Seeks.

Finally, Mr. Fletcher fails to establish Article III standing for a third and independent reason:  he cannot demonstrate that any alleged harm will be redressed by this Court.  That is, Plaintiff makes no attempt to argue that his requested relief – restoring $1,577.93 to the Plan – has any likelihood of redressing his threatened injury – risk of future loss of his pension benefit.  The requested $1,577.93 will do nothing to mitigate the $16.08 billion funding deficit of the Plan or redress the potential loss of pension benefits.  And, indeed, Mr. Fletcher does not and cannot argue that it will.  Instead, relying upon his prior mischaracterization of the alleged injury in fact, Mr. Fletcher simply argues that "[a]n award of $1,577.93 will completely redress" the "slight increased risk . . . that constitute[s] Fletcher's individual injury."  (Opp. at 21.)  Plaintiff's argument in this regard again underscores the circular nature of Plaintiff's reasoning.  For, if *any* financial loss to the Plan, however minimal, generates a "slight increased risk" (an injury in fact), then *any* relief, however minimal, will equally redress that injury.  The redressability analysis of Article III is rendered as empty and absent of boundaries as the proposed analysis of injury in fact.  The proper question is whether Plaintiff's sought relief has any likelihood of forestalling the future loss of pension benefits.  And the answer to that question is a resounding no.  *See Warth v. Seldin*, 422 U.S. 490, 505, 508 (1975) (to have standing, a plaintiff must establish that "the requested relief will remove the harm," and that "he personally would benefit in a tangible way from the court's intervention"); *Glanton*, 465 F.3d at 1125 (finding "[t]here is no redressibility, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or predict'").

### B.   Plaintiff Cannot Dispense With the Requirement of Demonstrating an Actual or Imminent Injury in Fact.

No doubt recognizing the flaws of his constitutional-standing argument, Plaintiff asks the Court in varying ways to sidestep the injury in fact analysis mandated by Article III jurisprudence and allow his claims to proceed nonetheless.

### 1.   A Statutory Violation in Itself Is Insufficient to Confer Standing.

Lacking a legally sufficient injury in fact, Plaintiff instead argues that an alleged statutory violation of ERISA's fiduciary duties alone, absent any allegation or showing of harm, is sufficient to confer Article III standing on an individual plan participant.  (Opp. at 19.)  Plaintiff is wrong.

First, Plaintiff's reliance on *Financial Institutions Retirement Fund v. Office of Thrift Supervision* ("*FIRF*"), 964 F.2d 142 (2d Cir. 1992), for the proposition that statutory violations on their own can satisfy the injury in fact requirement is misplaced.  (Opp. at 19-20.)  As courts have noted in declining to follow *FIRF*, the case was decided immediately prior to the Supreme Court's "landmark" decision in *Lujan*, which "changed the requirements of Article III standing." *Malkani v. Clark Consulting, Inc.*, 727 F. Supp. 2d 444, 451 n.7  (D. Md. 2010), *aff'd*, 441 F. App'x 164 (4th Cir. 2011) (declining to follow *FIRF* and rejecting the argument that violations of ERISA are sufficient to grant plaintiffs Article III standing); *see Vanderbilt Capital Advisors*, 834 F. Supp. 2d at 1255 (declining to follow *FIRF* as it was decided "before the Supreme Court clarified and more clearly articulated Article III standing requirements in *Lujan*" and was "not in line with the Supreme Court's . . . requirements" in *Lujan*).  Indeed, *Lujan* explained that while statutes may broaden categories of injury that can be alleged in support of standing, that is different than holding that Congress may abandon the requirement that plaintiffs must themselves have suffered an injury.  504 U.S. at 578; *see also Raines v. Byrd*, 521 U.S. 811, 820

(1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

Further, in the twenty-two years following *FIRF*, the Second Circuit has not once relied upon *FIRF* to hold as Plaintiff insists this Court must do now. In the meantime, other circuits have expressly concluded that, based on *Lujan* and its progeny, a statutory violation alone is insufficient to establish Article III standing. *See Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 120-21 (2d Cir. 2009) ("Kendall cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing."); *Alphin*, 704 F.3d at 338 (rejecting assertion that alleged deprivation of statutory right to have plan operated in accordance with ERISA's fiduciary requirements constituted injury in fact necessary for constitutional standing). Indeed, as the Fourth Circuit concluded, such an approach is a "non-starter" as it "conflates statutory standing with constitutional standing" and ignores the mandate that plaintiffs establish both. *Alphin*, 704 F.3d at 339; *see also Fox*, 20 F. Supp. 3d at 143 ("Plaintiffs have a statutory right that is cancelled by their failure to meet the 'irreducible constitutional minimum' required for bringing suit in federal court." (quoting *Lujan*, 504 U.S. at 560)).[9]

---

[9] The Second Circuit itself has subsequently clarified *FIRF*'s suggestion that an allegation of a breach of fiduciary duty, without more, suffices for injury. Specifically, *Central States I* made clear that *FIRF* has been read to apply *only* to claims for injunctive relief. *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.* ("*Central States I*"), 433 F.3d 181, 199 (2d Cir. 2005) ("[The plaintiff] need not demonstrate actual harm in order to have standing to seek injunctive relief . . . ." (quoting *Horvath v. Keystone Health Plan*, 333 F.3d 450, 456-57 (3d Cir. 2003)) (citing *FIRF*, 964 F.2d at 149)). Defendants separately address Plaintiff's arguments that he possesses constitutional standing for his equitable claims. *See infra* Section II.B.2.

13

Nor does Plaintiff's reference to his claim at Count II for alleged per se violations of ERISA's prohibited transactions rules, 29 U.S.C. § 1106, do away with his injury requirement. In particular, the case cited does not stand for the proposition that a defined benefit pension plan participant can sue for monetary relief under ERISA Section 409, 29 U.S.C. § 1109, without showing particularized injury to the participant.  (Opp. at 20 (citing *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 107 n.4 (2d Cir. 2011).)   To the contrary, the Second Circuit held that a plan beneficiary who had not shown individual harm had constitutional standing *only* to bring a Section 406 claim for injunctive relief, and did *not* have standing to bring a claim for disgorgement or restitution, both of which require particularized injury.  *Faber*, 648 F.3d at 102-03; *see also McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1083-87 (8th Cir. 2009) (because plaintiffs had suffered no injury in fact, they lacked constitutional standing to pursue claims for monetary relief, even though they had alleged prohibited transactions).[10]

For these reasons, the Court should reject Plaintiff's invitation to override Article III's required showing of an injury in fact.

### 2.    Plaintiff's Attempt to Rebrand Monetary Claims as Equitable Relief Likewise Fails.

Plaintiff next attempts to bypass the constitutional requirements by rebranding his claim for monetary damages as the equitable remedy of "surcharge" based on *CIGNA Corp. v Amara*, 131 S. Ct 1866 (2011).  He argues that "[a]ny infringement of a protected right, loss to a plan, or

---

[10] Plaintiff also relies upon *LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007), but merely for its modest proposition that proving a fiduciary breach itself under ERISA does not require a showing of financial loss to the plan.  (Opp. at 20.)  Such a claim is uncontroversial, but it offers no support to Plaintiff's broader assertion that a statutory violation of ERISA may, in itself, constitute an injury in fact sufficient for constitutional standing.  The parties in *LaScala* did not raise, and the Second Circuit did not address, the issue of Article III in that decision.

unjust enrichment of a breaching fiduciary constitutes an injury in fact remediable through ERISA's equitable remedies."  (Opp. at 23-24.)

Mr. Fletcher's argument finds no support in *Amara*, binding Second Circuit case law, or the case law of other circuits.  First, although Mr. Fletcher invokes both the Supreme Court's decision in *Amara* and the lower court's decision upon remand, the *Amara* plaintiffs' Article III argument was never challenged and the legal issue formed no part of either decision.[11]  Second, Plaintiff is unable to point to a single case in support of his assertion that a claim for surcharge does not require personal injury in fact for Article III standing.  (*See* Opp. at 23-24.)  By contrast, the Second Circuit has repeatedly distinguished between claims for injunctive relief and claims for other forms of equitable relief, including disgorgement and restitution, for purposes of constitutional standing.  As the court explained in *Central States I*:

> Requests for restitution or disgorgement under ERISA are different from requests for injunctive relief.  Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury in fact.

433 F.3d at 200 (citing *Horvath*, 333 F.3d at 456); *see also Faber*, 648 F.3d at 102 (plaintiff does not have to establish individual injury in fact for injunctive relief related to ERISA's fiduciary duty requirements, but claims for other forms of equitable relief require individual loss to establish constitutional standing); *Kendall*, 561 F.3d at 120-21 (same).

Mr. Fletcher cites a series of cases for the proposition that, after *Amara*, "several Courts of Appeal [have held] that financial loss is not a prerequisite for Article III standing to bring a

---

[11] The Supreme Court addressed what showing of harm, if any, a participant needed to demonstrate to recover on a claim where a Summary Plan Description conflicted with the terms of the plan document and what cause of action was appropriate to such a claim.  *Amara*, 131 S. Ct. 1866.  Upon remand,, the district court was asked to determine the appropriate remedy under ERISA Section 502(a)(3), and concluded that both plan reformation and surcharge were appropriate.  *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 246-47 (D. Conn. 2012).  Clearly, no challenge to plaintiffs' constitutional standing to bring such claims was presented, and neither court addressed the issue.

disgorgement claim under ERISA."  (Opp. at 24 n.23.)   These cases are easily distinguishable in that they involved individual investment accounts.  It is well established that injuries to such accounts constitute an individual injury in fact sufficient for Article III standing because, in contrast to defined benefit plans like Mr. Fletcher's Plan, "each beneficiary is entitled to whatever assets are dedicated to his individual account."  *Hughes Aircraft*, 525 U.S. at 440. Accordingly, in such cases, plaintiffs could seek disgorgement of profits by defendants even when each plaintiff has received all of the benefits to which he or she was legally entitled.[12] None of these cases, then, involved defined benefit plans in which "no [plan] member has a claim to any particular asset that composes a part of the plan's general asset pool."  *Id*. at 433. Thus, none of these cases supports Plaintiff's claim that disgorgement claims under ERISA dispense with the individual injury in fact requirement.

In fact, recent Third Circuit case law clearly shows that, after *Amara*, courts of appeal continue to require plaintiffs to establish an individual injury in fact in order to bring claims for equitable monetary relief, including disgorgement and surcharge.  Specifically, in *Perelman*, the Third Circuit reaffirmed its prior holding from *Horvath* that, whereas in "claims for injunctive relief . . . injury may exist simply by virtue of the defendant's violation of an ERISA statutory duty, such as failure to comply with disclosure requirements," "[c]laims demanding a monetary equitable remedy, by contrast, require the plaintiff to allege an individualized financial harm

---

[12] *See Pender v. Bank of Am. Corp.*, No. 14-1011, 2015 WL 3541927, at *1 (4th Cir. June 8, 2015) (plaintiff suffered an injury in fact when fiduciary made undisclosed investments with assets from plaintiff's separate investment account and retained for its own benefit the spread that resulted); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 417 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014) (finding plaintiff had constitutional standing to challenge fiduciary's misuse of a retained asset account, noting that plaintiff was "seeking recovery based on Lincoln's use of assets that belonged to her"); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 (1st Cir. 2014), *cert. denied*, 135 S. Ct. 1182 (2015) (plaintiffs had constitutional standing to challenge fiduciary's disposition of their assets in an individual retained asset account, noting that each plaintiff "claims that the insurer wrongfully retained his or her assets"); *Vander Luitgaren v. Sun Life Ins. Co. of Can*., No. 09-11410, 2010 WL 4722269, at *1 (D. Mass. Nov. 18, 2010) (plaintiffs had constitutional standing to sue for disgorgement of profit earned via a retained asset account).

traceable to the defendant's alleged ERISA violations." *Perelman¸* 2015 WL 4174537, at *4 (citing *Horvath*, 333 F.3d at 457).  The plaintiff in *Perelman* had specifically asserted "equitable relief in the form of restitution or surcharge," yet the court required him to demonstrate "an individualized financial harm" sufficient under *Lujan* to establish Article III standing.  *Id.* Although the plaintiff alleged a $1.3 million net diminution of plan assets, the court found he had failed to establish Article III standing for his equitable monetary claims because his "allegation that the Plan is nonetheless at risk of default is entirely speculative."  *Id.* at *4-6.

Consequently, neither *Amara* nor any other case Plaintiff cites does anything to undermine Defendants' original argument that Mr. Fletcher's claims for equitable relief should be dismissed for lack of constitutional standing.  Moreover, Mr. Fletcher's attempt to label his monetary claims as equitable "surcharge" should be rejected.  Simply put, all of the relief that Mr. Fletcher seeks is related directly to the alleged monetary loss to the Plan and does not exist wholly apart from his monetary claims.  *See Fox*, 20 F. Supp. 3d at 144 (plaintiffs lacked Article III standing on claims for equitable and injunctive relief because such claims were "plainly intertwined with [p]laintiffs' demands for monetary relief"); *New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Em'prs Int'l Longshoremen's Ass'n AFL–CIO Pension Fund*, No. 07–6349, 2008 WL 215654, at *3 (E.D. La. Jan. 24, 2008) (same).  For this reason, this Court should find that Mr. Fletcher lacks constitutional standing to bring suit for the sought-after equitable relief, including "surcharge."

### 3.   This Court Should Reject Plaintiff's Attempt to Create "Representational Standing."

Plaintiff also argues that he need not establish individual injury because he can assert "representational" or "derivative" standing based on an injury to the Plan alone.  He contends that the statute authorizing participants to sue for losses to a plan also gives rise to representational standing.  (Opp. at 5-8.)  Yet, a "mere authorization to represent a third party's

17

interests" is not "sufficient to confer Article III standing on private parties with no injury of their own." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2665 (2013).

As Mr. Fletcher himself acknowledges, the Second Circuit has not addressed the issue of representational standing in the context of ERISA claims.  (Opp. at 12.)  In fact, no federal appellate court has accepted representational standing as a sufficient basis under Article III for bringing a suit on behalf of a defined benefit plan.  Yet, the Third, Fourth, Sixth, Eighth, and Ninth circuits have all held to the contrary – that a participant who cannot establish an individualized injury in fact from an alleged ERISA violation also cannot establish standing purely as a representative of his ERISA plan.  *See Perelman*, 2015 WL 4174537, at *4 (rejecting plaintiff's claim that "he need not prove an individualized injury insofar as he seeks monetary equitable remedies in a 'derivative' or 'representational' capacity," finding that "[o]ur own case law provides no support for this theory, and other federal appellate courts have unanimously rejected it"); *Alphin*, 704 F.3d at 334-35 (rejecting the argument that plan participants have "the same kind of representational standing as a trustee, fiduciary, or assignee"); *Loren*, 505 F.3d at 608-09 ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing."); *Harley*, 284 F.3d at 906 ("[T]he limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan."); *Glanton*, 465 F.3d at 1127 (acknowledging that "ERISA plan beneficiaries may bring suits on behalf of the plan in a representative capacity" but holding that they can do so only "so long as [they] otherwise meet the requirements for Article III standing"); *see also McCullough*, 585 F.3d at 1086 (rejecting plaintiff's argument that recent

Supreme Court precedent supersedes the Eight Circuit's prior refusal of representational standing in *Harley*).

Finding no support from other circuits, Mr. Fletcher incorrectly contends that the Second Circuit has previously held that participants have representational standing to assert such claims. He relies entirely upon a single footnote in *L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.* ("*LIHS*"), 710 F.3d 57 (2d Cir. 2013).  But that footnote does not in fact hold that ERISA plan participants can assert representational standing claims on behalf of their plans.  Rather, in that case, ERISA claims were brought jointly by an individual plan participant alongside LIHS, a former plan fiduciary. Defendants had separately challenged the statutory standing of both plaintiffs, arguing in part that LIHS in particular lacked statutory standing because it was no longer a plan fiduciary.  The court rejected both challenges and concluded that LIHS remained a fiduciary to the plan.  Having established that LIHS was a plan fiduciary, the court provided a brief footnote summarily rejecting the defendants' related challenge to the plaintiffs' Article III standing:  "As discussed, LIHS and the Class [of participants] have asserted their claims in a derivative capacity, to recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties. This is injury in fact sufficient for constitutional standing."  *Id*. at 67 n.5.

Plaintiff misreads and mischaracterizes this footnote by claiming that the Second Circuit finally resolved the "difficult" issue of representational standing in favor of plan participants.  As Mr. Fletcher points out (Opp. at 10 & n.16), the court in *LIHS* received detailed briefing on representational standing, in which it was noted that the Second Circuit had not previously addressed the issue, but that other circuit courts had "uniformly rejected" arguments in favor of representational standing.  *See* Reply Brief of Defendants-Appellants, *LIHS*, No. 12-2082, 2012

19

WL 6053206, at *4-5 (2d Cir. Nov. 29, 2012) (discussing *Harley* and *Glanton* as examples of contrary appellate case law).  If the Second Circuit had intended to create a circuit split through this footnote recognizing representational standing, the court would certainly have discussed *Alphin*, *Loren*, *Harley*, and *Glanton* and provided the reason that it disagreed with its sister circuits.  The footnote does none of that.  Accordingly, it is far more reasonable to read this footnote, *not* as an unprecedented endorsement of representational standing for ERISA plan participants, but as an uncontroversial finding that plan trustees and other fiduciaries possess constitutional standing to sue on behalf of those plans.  Indeed, the court explicitly states that its constitutional holding is directly based on its prior statutory analysis – "[a]s discussed" above – and, more precisely, on its prior conclusion that LIHS was, indeed, a plan fiduciary.  That holding requires little explanation or analysis because it is well-established law that trustees and other fiduciaries can assert representational standing under Article III (in direct contrast to plan participants like Mr. Fletcher).  *See, e.g.*, *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) ("[t]rustees bring suits to benefit their trusts").  Once the fiduciary's standing to sue was established, that was sufficient for that case to proceed:  it is common for courts, especially appellate courts, to address the standing only of a single plaintiff before proceeding to the merits of a dispute.  *See Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.* ("*Central States II*"), 504 F.3d 229, 243 (2d Cir. 2007) (declining, after finding that a plan trustee had standing, to consider the standing of plan participants); *see also, e.g.*, *Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984) (where one plaintiff "clearly d[id] have standing," no need to address the others).  Accordingly, it seems unreasonable to believe that the Second Circuit intended to create a circuit split through a footnote that does not address the significant constitutional issues raised by such a holding when

that same footnote can more easily be read to mean that the fiduciary had standing and the court needed to go no further. Indeed, Defendants have found no court that has given *LIHS* the broad reading that Plaintiff has ascribed to it, and of course Plaintiff points to none.[13]

Accordingly, this Court should follow the Third, Fourth, Sixth, Eighth, and Ninth Circuits in rejecting Plaintiff's representational standing argument.

### 4.    Plaintiff's Reliance on Trust Law Is Misplaced.

Because ERISA jurisprudence does not afford them constitutional standing under Article III, Plaintiff next contends that the historical common law of trusts supports representational standing in ERISA cases. (Opp. at 14-16.) Trust law, however, is not incorporated *en masse* into ERISA. To the contrary, "trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes

---

[13] Plaintiff offers a lengthy analysis of the *Central States* cases to support the proposition that "*Central States I* does not hold or suggest the Second Circuit's creation of an 'individual loss' requirement to assert a representative or derivative claim for injury to a plan under ERISA." (Opp. at 12.) But the underlying premise of that statement is patently false: the Second Circuit has created no "requirement regarding a representative or derivative claim" because the Second Circuit has *never recognized a representative or derivative claim*. And, because neither *Central States I* nor *Central States II* adopted a theory of representational standing, these cases left undisturbed well-established case law requiring an ERISA plan participant to establish Article III standing in accordance with the dictates of *Lujan*. *See Kendall*, 561 F.3d at 118 ("Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss, to wit, that they have suffered an injury-in-fact." (quoting *Central States I*, 433 F.3d at 200)).

Plaintiff also relies on the unpublished district court opinion *In re Medco Health Solutions, Inc. Pharmaceutical Benefits Management Litigation* ("*Central States 1.5*"), No. 03-1508, slip op. at 3 n.3 (S.D.N.Y. Aug. 11, 2006), which held that plaintiffs possessed constitutional standing on a number of separate grounds, including that they had "representational standing" for their claims. Yet, as Plaintiff admits (Opp. at 10, 12), in *Central States II*, the Second Circuit explicitly distanced itself from that holding, affirming the district court's holding on separate grounds and stating that it "express[ed] no opinion" regarding representational standing. 504 F.3d at 243 n.3. Notably, no court has followed (or even cited) the district court's opinion on which Plaintiff relies, and its reasoning has been rejected by the Third, Fourth, Sixth, Eighth, and Ninth circuits.

21

require departing from common-law trust requirements." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).  "[T]rust law does not tell the entire story," *id.*, and the Supreme Court has cautioned that "it must give way if it is inconsistent with 'the language of the [ERISA] statute, its structure, or its purposes,'" *Hughes Aircraft*, 525 U.S. at 447.

Furthermore, as the Supreme Court has recently emphasized, "[i]t is . . . a 'fundamental restriction on [judicial] authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth*, 133 S. Ct. at 2663 (third alteration in original) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)); *see also id.* at 2665 (rejecting the argument that "mere authorization to represent a third party's interests is sufficient to confer Article III standing on private parties with no injury of their own").  There are "limited exceptions" to that rule, *id.* at 2663, where "history and precedent make clear" that courts should permit one party to vindicate another's injury, *Sprint*, 554 U.S. at 271.  However, the circuit courts that have considered the question have unanimously concluded that nothing, including historical tradition, supports standing for ERISA beneficiaries or participants to bring suit based on an injury to the plan that has not affected them personally.  *See Harley*, 284 F.3d at 907 ("Under the law of trusts, '[a] particular beneficiary cannot maintain a suit for a breach of trust which does not involve any violation of duty to him.'" (quoting Restatement (Second) of Trusts § 214 cmt. b (1959))); *see also Glanton*, 465 F.3d at 1125-26 & n.2 (same); *Alphin*, 704 F.3d at 336 (noting the "[a]bsen[ce] . . . [of] any history" that would justify representational standing in "the ERISA context").  Therefore, Plaintiff's reliance on the historical common law of trusts for the proposition that a beneficiary may sue a trustee for breach of trust ignores the limits on that principle.  For, even if applicable here, the common law of trusts provides that only a

"beneficiary whose rights are or may be adversely affected by the matter(s) at issue" can sue. Restatement (Third) of Trusts § 94 cmt. b (2012).[14]

### C.   Mr. Fletcher Lacks Statutory Standing to Bring Claims on Behalf of Other Plans in Which He Is Not a Participant.

Once the Court concludes that Mr. Fletcher lacks Article III standing to pursue his claims, its analysis can properly end here.  Even if this Court finds that Mr. Fletcher somehow has standing to bring claims on behalf of the Central States Plan, however, it should dismiss the claims Mr. Fletcher seeks to bring on behalf of other allegedly similarly situated ERISA plans (the "Other Plans") in which he is not a participant because he lacks statutory standing as to them.[15]  As Defendants previously demonstrated (*see* Mem. at 22-27), ERISA does not authorize

---

[14] Plaintiff also cites to *Scanlan v. Eisenberg*, 669 F.2d 838 (7th Cir. 2012), a case involving neither ERISA nor representational standing.  Rather, in *Scanlan*, the life beneficiary of several discretionary trusts under Illinois law brought breach of fiduciary duty claims. *Id*. at 840-41. The Seventh Circuit held that the beneficiary, who was "eligible to receive all of the Trusts' corpus," had "a legally protected interest" in the corpus and a "personal stake in the outcome." *Id*. at 846 (internal quotation marks omitted); *see also id*. (emphasizing that its holding would not "lead to any beneficiary having standing whether or not its specific interest is affected").  By contrast, a defined benefit participant under ERISA does not have a similar stake in the underlying corpus, as the Supreme Court made clear in *Hughes Aircraft*.  *See Hughes Aircraft*, 525 U.S. at 440 (finding a defined benefit plan participant has no "claim to any particular asset that composes a part of the plan's general asset pool," but instead has only "a right to a certain defined level of benefits").

[15] As noted in Defendants' opening brief, Mr. Fletcher also lacks constitutional standing under Article III to assert claims on behalf of any ERISA plans other than the Central States Plan. Although Mr. Fletcher defines the putative class as "[t]he participants, beneficiaries, and named fiduciaries of all ERISA Plans" in which unauthorized markups and markdowns were charged (Am. Compl. ¶ 57), the Amended Complaint fails to establish that the participants and beneficiaries suffered any individual injury in fact because (1) the Amended Complaint fails to allege that Defendants' conduct caused losses to these Other Plans sufficient to create an increased risk of plan default and hence the loss of promised benefits (i.e., Mr. Fletcher alleges no injury-in-fact); and (2) assuming *arguendo*, that the Amended Complaint alleges an injury in fact, it separately fails to allege either that Defendants' conduct (rather than actions by a third party) is the cause of that risk of default or that the relief sought would have any likelihood of redressing that risk of plan default.  Or, put simply, the infirmities undermining Mr. Fletcher's Article III standing would also apply to the Article III standing of his putative class, and the

(continued . . .)

23

suits by participants to remedy alleged breaches of duties owed to other plans in which they do not participate, or related to plans from which they cannot receive benefits and as to which they have no legitimate interest.

In an attempt to thwart the statutory standing hurdle, Plaintiff argues that he is not seeking to bring claims on behalf of any other *plan*, but is, rather, seeking to bring claims only "as a class action on behalf of participants, beneficiaries, and named fiduciaries of other plans." (Opp. at 24.)  Yet this argument is purely semantic and cannot confer on him the standing he plainly lacks.  ERISA expressly confers standing on four classes of plaintiffs: participants, beneficiaries, fiduciaries and the Secretary of Labor.  See 29 U.S.C. § 1132(a).  Plaintiff alleges standing to sue under ERISA Sections 502(a)(2) and (3).  (Am. Compl. ¶¶ 52-55.)  Section 502(a)(2) permits a "participant" to sue for "appropriate relief under section 1109," which states in relevant part, "[a]ny person who is a fiduciary *with respect to a plan* who breaches any of the responsibilities . . . imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan."  29 U.S.C. § 1109(a) (emphasis added).  Similarly, Section 502(a)(3) authorizes suit by a "participant" "to enjoin any act or practice which violates any provision of this subchapter or *the terms of the plan*, or. . . to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3) (emphasis added).  Obviously, this statutory language indicates that the "participant" bringing suit is a participant in the plan for which he seeks relief.  *See Hastings v. Wilson*, 516 F.3d 1055, 1060-61 (8th Cir. 2008) (holding that ERISA plaintiffs lacked standing to bring suit claiming defendants

---

Amended Complaint fails to define the class in such a way as to remedy those deficiencies. Plaintiff concedes, as he must, that the Amended Complaint "does not allege any facts regarding the funded status of any plan other than the Central States Plan, nor whether the economic harm to other plans increases the risk that benefits will not be paid."  (Opp. at 28.)

breached fiduciary duties related to plans in which plaintiffs did not participate); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (holding that plaintiffs lacked standing to sue for violations of ERISA's disclosure requirements because they were not participants in the plan at the time of the alleged violation).  Here, Plaintiff has not alleged that he was a participant, beneficiary, or fiduciary in or of any of the ERISA plans for which he purports to seek relief other than the Central States Plan.  Mr. Fletcher, therefore, lacks standing to assert claims on behalf of any plan in which he was not a participant, beneficiary, or fiduciary under the express terms of the statute, and the Court should dismiss those claims.

In opposition, Mr. Fletcher relies upon a set of distinguishable cases from other circuits that he states have rejected the argument that plaintiffs in class actions lack standing to represent participants in other ERISA plans.  (Opp. at 25.)  First, Plaintiff points to *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410, 422 (6th Cir. 1998), and *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993), which are readily distinguishable and, critically, have not been endorsed by this Court for the broad proposition Plaintiff suggests.[16]  Numerous courts – including in this district – have declined to follow *Fallick* and/or *Forbush* on these grounds and dismissed claims brought by plaintiffs on behalf of plans in which they were not participants. *See, e.g.*, *Gates v. United Health Grp. Inc.*, No. 11-3487, 2012 WL 2953050, at *9 (S.D.N.Y.

---

[16] In both cases, a single entity administered multiple ERISA plans, including the class representative's plan.  *See Fallick*, 162 F.3d at 411; *Forbush*, 994 F.2d at 1103.  The class representative was allowed to represent participants in other ERISA plans that were administered by the same defendant because the representative himself had standing to sue.  *Fallick*, 162 F.3d at 423; *Forbush*, 994 F.2d at 1106.  By contrast, in the present case, Mr. Fletcher seeks to represent plans administered by different plan sponsors than that of his plan and as shown above, Mr. Fletcher lacks standing here with respect to it.  Accordingly, neither *Fallick* nor *Forbush* eliminated the well-established requirement that the named plaintiff of an ERISA claim have individual standing against the defendant.  *See, e.g.*, *Fallick*, 162 F.3d at 423 ("[a] potential class representative must demonstrate individual standing [vis-a-vis] the defendant; he cannot acquire such standing merely by virtue of bringing a class action" (citations omitted)).

July 16, 2012) (declining to follow *Fallick* and dismissing claims purportedly brought on behalf of plans other than the one in which plaintiff participated).[17]

Furthermore, relying on *NECA-IBEW Health & Welfare Fund v. Goldman Sachs Co.*, 693 F.3d 145, 158 (2d Cir. 2012) ("*NECA*"), Plaintiff contends that he possesses "class standing" to bring these claims regardless of whether he himself possesses the required statutory and constitutional standing to bring claims on behalf of others.  (Opp. at 26-28.)  But *NECA* simply does not have the broad implications that Plaintiff contends.[18]  Rather than dispensing with the constitutional and statutory standing requirements in the class context, as Plaintiff asks this Court to do, the court found more narrowly that NECA possessed standing for its putative class claims under the Securities Act, based on the specific structure of the mortgage-backed securities at issue.  The court's holding was limited and fact-specific, the narrow scope of which was reinforced by the Second Circuit in its subsequent decision in *Retirement Board of the Policemen's Annuity & Benefit Fund of the City Of Chicago v. Bank Of New York Mellon*, Nos.

---

[17] *See also Hastings v. Wilson*, No. 05-2566, 2007 WL 333617, at *4 (D. Minn. Feb. 1, 2007), *aff'd*, 516 F.3d 1055 (8th Cir. 2008) (declining to follow *Fallick* and *Forbush* on these grounds and dismissing claims brought by plaintiffs against plans in which they were not participants and consequently lacked statutory standing to sue); *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 652-54 (S.D. Tex. 2004) (same); *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 167-69 (D. Mass. 2004) (same).

Plaintiff cites a line of cases that have nonetheless followed *Fallick* and *Forbush*.  (*See* Opp. at 25 n.26.)  Defendants respectfully submit that, to the extent that these cases grant statutory standing for plaintiffs to bring claims on behalf of plans in which they are not fiduciaries, participants, or beneficiaries, these cases deviate from the clear statutory language of ERISA. Furthermore, Plaintiffs can cite to no court in the Second Circuit that has adopted the analysis from *Fallick* and *Forbush*, and this Court should continue to reject the reasoning of these decisions, which is distinguishable from the present case for the reasons presented above.

[18] In *NECA*, the court specifically held that, under the Securities Act, a purchaser of mortgage-backed securities issuing from a particular offering may, in appropriate circumstances, assert class claims on behalf of purchasers of other tranches of securities, whether those securities are from the same offering or from other offerings, so long as those offerings are backed by loans from a set of common originators.  693 F.3d  at 163-65.

13-1776, 13-1772, 2014 WL 9860557, at *23 (2d Cir. Dec. 23, 2014). There the court found that plaintiffs lacked standing to assert claims against the Bank of New York Mellon related to trusts in which plaintiffs did not invest because, in contrast to the Securities Act violations alleged in *NECA*, the plaintiffs' allegations required individualized investigation of the alleged misconduct in each offering.[19]

Therefore, Plaintiff's reliance on *NECA* is flawed for several reasons. First, *NECA* emerged in the context of the Securities Act and the peculiar factual circumstances of mortgage-related securities. Neither *NECA* nor any subsequent case has, to Defendants' knowledge, applied the same legal standard to ERISA claims, which operate within their own, highly specific statutory context and history. Second, as *Policemen's Annuity* demonstrates, even within the context of mortgage-backed securities claims brought pursuant to the Securities Act, *NECA* does not represent a general expansion of Article III and statutory standing, but a narrow and factually specific inquiry into whether constitutional and statutory standing requirements are satisfied based on certain factual characteristics that exist across individual purchasers by virtue of the structure of the security itself.

For these reasons, Mr. Fletcher lacks statutory standing under ERISA to bring claims on behalf of the Other Plans, and those claims should likewise be dismissed under Rule 12(b)(1).

---

[19] As demonstrated by Plaintiff's failed attempt to add Mr. Potter and the Teamsters Plan to the litigation, distinct factual differences exist from one ERISA plan or its participants to the next. Beyond the question of whether such plans or their participants may have been harmed by any of the conduct alleged here is the critical question of whether any of the Defendants named here acted as a fiduciary to any of the ERISA plans contemplated by Plaintiff's proposed class. To suggest Plaintiff can represent the broad class he suggests runs counter to controlling case law and the facts at issue here.

**III.     CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiff's Amended Complaint in its entirety with prejudice for lack of subject matter jurisdiction.


Dated:  August 3, 2015                          Respectfully submitted,
        New York, New York
                                                MORGAN, LEWIS & BOCKIUS LLP


                                                By:   /s/ Melissa D. Hill
                                                      Brian T. Ortelere
                                                      Jeremy P. Blumenfeld
                                                      Melissa D. Hill
                                                      101 Park Avenue
                                                      New York, NY 10178-0060
                                                      Telephone: (212) 309-6000
                                                      Facsimile: (212) 309-6001
                                                      E-mail: bortelere@morganlewis.com
                                                              jblumenfeld@morganlewis.com
                                                              melissa.hill@morganlewis.com

                                                      *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Melissa D. Hill, hereby certify that on August 3, 2015, I served a copy of Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Amended Complaint via ECF on:

James A. Bloom
Keller Rohrback P.L.C (Phoenix)
National Bank Plaza, 3101 N. Central Avenue
Suite 1400
Phoenix, AZ 85012

James Moore
McTigue & Veis LLP
4530 Wisconsin Ave. N.W., Suite 300
Washington, DC 20016

Jonathan Gans Axelrod
Beins Axelrod P.C.
1625 Massachusetts Ave. NW Suite 500
Washington, DC 20086

David Steven Preminger
Keller Rohrback L.L.P. (NYC)
1140 Avenue of the Americas, 9th Floor
New York, NY 10003

Derek W. Loeser
Lynn Lincoln Sarko
Thomas David Copley
Keller Rohrback L.L.P.(WA)
1201 Third Avenue, Suite 3200
Seattle, WA 98101

*Attorneys for Plaintiff*

s/ Melissa D. Hill
Melissa D. Hill

1